NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| INTERFAITH COMMUNITY ORGANIZATION et al., : <br><br> Plaintiffs, : <br><br> v. : <br><br> HONEYWELL INTERNATIONAL INC. et al., : <br><br> Defendants. : | **Hon. Dennis M. Cavanaugh** <br><br> **OPINION** <br><br> Civil Action No. 95-2097 (DMC) |

<u>DENNIS M. CAVANAUGH, U.S.D.J.</u>:

This matter comes before the Court upon motion by Defendant Honeywell International Inc. ("Honeywell") to join the Environmental Protection Agency ("EPA") pursuant to Federal Rule of Civil Procedure 19 or in the alternative to invite the appearance of the EPA as *amicus curiae* for the limited purpose of selecting and implementing the remedy for contaminated sediments. Pursuant to Rule 78 of the Federal Rules of Civil Procedure, no oral argument was heard. After carefully considering the submissions of the parties, and based upon the following, it is the finding of this Court that Defendant's motion to join is **denied**. Additionally, this Court **denies** Defendant's request to invite the EPA to appear as *amicus curiae*.

**I.     BACKGROUND**

      **A.     Factual and Procedural Background**

The facts relevant to this motion are generally undisputed by the parties. This action was originally brought by five individual Plaintiffs under the Resource Conservation and Recovery Act

("RCRA"), 42 U.S.C. 7002(a)(1)(B) against Defendant Honeywell and several other parties, seeking declaratory and injunctive relief mandating the cleanup of environmental contamination at Study Area No. 7 (the "Site"), located in Jersey City, New Jersey. See Interfaith Cmty. Org. v. Honeywell, Inc., 263 F. Supp. 2d 796, 802 (D.N.J. 2003), aff'd, 399 F.3d 248 (3d Cir.), cert. denied, 15 S.Ct. 2951 (2005). This Court issued a decision concluding that the Site presents an imminent and substantial endangerment to health or the environment and finding that Honeywell was responsible for abating the hazard by cleaning up the Site. Id. The Court ordered Honeywell to, *inter alia*, "remedy all chromium contaminated sediments in the Hackensack River in the vicinity of the Site containing chromium at levels at or exceeding NJDEP's ERM toxicity screening level of 370 ppm." June 30, 2003 Order Entering Final Judgment, ¶3. Additionally, the Court ordered the appointment of a Special Master to oversee all aspects of the remediation and to ensure timely compliance with a remediation schedule. 263 F. Supp. at 834.

The specific remedy that Honeywell will be required to conduct will be selected using the process set forth in the Restated Stipulated Order Approving Summary Remedial Action Work Plan, entered March 26, 2004, ("Restated Order") and the Second Amendment to the Restated Stipulated Order Approving Summary Remedial Action Work Plan, entered May 1, 2006 ("Second Amended Order"). Pursuant to these orders, Honeywell was required to submit an Interim Remedial Alternatives Analysis for the sediments ("Sediment RAA") to the Special Master and Interfaith Community Organization ("ICO") by July 1, 2006, and was required to submit a Final Sediment RAA by December 5, 2006. After Honeywell's submission of the final Sediment RAA, the parties must attempt to reach agreement on a sediment remedy. If they cannot do so, the Special Master will submit his recommendations to the Court for a determination. After a remedy has been selected,

deadlines for design and implementation of the sediment remedy will be established. Honeywell will be required to prepare and submit detailed design drawings and specifications in the draft and final form to the Special Master and ICO for review and comment. Further, Honeywell will be required to obtain all necessary permit approvals prior to submission of the final design report to the Court.

Since the time this litigation was commenced, the EPA has been leading an investigation into Newark Bay under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9601. As of 2004, a portion of the EPA's work has included the Hackensack River sediments that have been the subject of the Special Master process. Specifically, the EPA entered into an Administrative Order on Consent ("AOC") with the Diamond Alkali Company (now Occidental Chemical Corporation ("Occidental")), the company that operated a facility on the lower Passaic River. See Administrative Order on Consent for Remedial Investigation and Feasibility Study, U.S. E.P.A. Index No. CERCLA-02-2004-2010 (February 17, 2004) (Henig-Elona Cert, Ex. B). Pursuant to the AOC, Occidental agreed to undertake a Remedial Investigation and Feasibility Study ("RI/FS") in accordance with an approved Remedial Investigation Work Plan ("RIWP"). Id. at ¶24. After preparation of the RI/FS, the "EPA will make the final selection of the remedial alternatives to be evaluated and implemented with respect to the Newark Bay Study Area." Id. at ¶52.

Defendant seeks to join the EPA pursuant to Federal Rule of Civil Procedure 19, arguing that joinder is necessary because (1) complete relief cannot be accorded if the EPA is not joined; (2) the EPA's interest will be impaired absent joinder; and (3) Honeywell faces the risk of inconsistent obligations if the EPA is not joined. More specifically, Honeywell alleges that the Diamond Alkali (Newark Bay) Superfund Site currently includes three of the four areas of sediment being

investigated under the supervision of the Special Master: (a) sediments immediately off the bulkhead of Study Area 7; (b) sediments adjacent to Study Area 6 (both north and south of Study Area 7); and (c) sediments in Droyer's Cove. Further, Defendant asserts that there is a possibility that site boundaries may be extended further upstream in the Hackensack River to include these sediments as well.

### B. Relevant Statutes

#### 1. RCRA

As stated above, the five original Plaintiffs in this case brought suit pursuant to RCRA. RCRA established a regulatory scheme designed to reduce the generation of hazardous wastes and to ensure proper storage, transportation, treatment, and disposal of hazardous wastes. 42 U.S.C. § 6902(b). Pursuant to Section 7003 of RCRA, the EPA is authorized to issue an administrative order or bring a lawsuit to secure appropriate injunctive relief in situations where the handling and management of solid or hazardous waste may present an "imminent and substantial endangerment" to human health and the environment. 42 U.S.C. § 6973. Additionally, Section 7002 of RCRA authorizes suits by private citizens to address handling and management of solid or hazardous waste that may present imminent and substantial endangerments. 42 U.S.C. §§ 6972(a)(1)(B), 6972(b)(2)(A). Finally, Section 7002 provides the EPA with a right to intervene in any citizen suit brought under Section 7002. 42 U.S.C. § 6972(d).

#### 2. CERCLA

The EPA's work in Newark Bay was initiated pursuant to CERCLA. CERCLA, as amended in 1986 by the Superfund Amendments and Reauthorization Act ("SARA"), Pub. L. No. 99-499, 100

Stat. 1613 (1986), "grants the President broad power to command government agencies and private parties to clean up hazardous waste sites." Key Tronic Corp. v. United States, 511 U.S. 809, 814 (1994). Pursuant to the powers granted by CERCLA, the President, acting through the EPA and other federal agencies, has the authority to (1) undertake response actions to address hazardous substances, 42 U.S.C. § 9604; and (2) compel responsible parties (through an administrative order or a request for judicial relief) to undertake response actions, which the EPA then monitors, 42 U.S.C. § 9606. Additionally, the EPA has the authority to enter into agreements with potentially responsible parties ("PRPs") that require PRPs to finance and perform response actions. 42 U.S.C. §§ 9622, 9604(a)(1). Section 122(e)(6) of CERCLA provides:

> When either the President, or a potentially responsible party pursuant to an administrative order or consent decree under this chapter, has initiated a remedial investigation and feasibility study for a particular facility under this chapter, no potentially responsible party may undertake any remedial action at the facility unless such remedial action has been authorized by the President.

42 U.S.C. § 9622(e)(6). This provision is designed to "avoid situations in which the PRP begins work at a site that prejudges or may be inconsistent with what the final remedy should be or exacerbates the problem." 132 Cong. Rec. S14895-02, 1986 WL 788210 (daily ed., Oct. 3, 1986).

**II.    DISCUSSION**

    **A.    Sovereign Immunity**

Under the principle of sovereign immunity, the United States cannot be sued except as it consents to be sued, and such consent must be "unequivocally expressed in a statutory text." See Lane v. Pena, 518 U.S. 187, 192 (1996). Accordingly, this Court does "not have jurisdiction over suits against the United States unless Congress, via a statute, expressly and unequivocally waives

the United States' immunity to suit." United States v. Bein, 214 F.3d 408, 412 (3d Cir. 2000) (citing United States v. Mitchell, 463 U.S. 206, 212 (1983)). In order for this Court to have jurisdiction over the United States or an instrumentality thereof, the party bringing suit against the government must establish that the United States has waived its sovereign immunity. See Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994) ("It is presumed that a cause lies outside this limited jurisdiction [of federal courts], and the burden of establishing the contrary rests upon the party asserting jurisdiction.") Thus, a party seeking to sue the government or one of its agencies, must identify a specific statutory provision waiving the United States' sovereign immunity from suit. See United States v. Sherwood, 312 U.S. 584, 587-88 (1941).

A waiver of immunity will not be implied, and "will be strictly construed, in terms of its scope, in favor of the sovereign." Lane, 518 U.S. at 192. Even in cases where the United States is found to be a necessary party under Rule 19(a), the Court lacks jurisdiction and the case must be dismissed if the United States has not waived its immunity. See California v. Arizona, 440 U.S. 59, 62-63 (1979) (recognizing that California's quiet title action against Arizona could not be maintained if the United States, a necessary and indispensable party, had not waived sovereign immunity). This is the case because Rule 19 joinder is a procedural mechanism without the power to confer subject matter jurisdiction over claims against sovereign entities See Fed. R. Civ. P. 82 (providing that "[t]hese rules shall not be construed to extend or limit the jurisdiction of the United States district courts or the venue of the actions therein.") Thus, in this case, before addressing the question of whether the EPA can be joined pursuant to Rule 19(a), the Court must first determine whether this Court has jurisdiction to join the EPA under the principle of sovereign immunity.

**B.     Waiver of Sovereign Immunity**

This Court cannot join the EPA pursuant to Federal Rule of Civil Procedure 19 unless the Court finds that the EPA's sovereign immunity has been waived. Thus, the threshold question in this case is whether the EPA has waived its sovereign immunity. Defendant cites two grounds for waiver of the EPA's sovereign immunity: RCRA § 7002 and APA § 702.

1.     RCRA § 7002

Defendant argues that Sections 7002(a)(1)(A) and (B) of RCRA contain clear waivers of the EPA's sovereign immunity in citizen suits. Section 7002(a)(1)(B) of RCRA states in relevant part that

> any person may commence a civil action on his own behalf . . . against any person, *including the United States and any other governmental instrumentality or agency, to the extent permitted by the eleventh amendment to the Constitution* . . . who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment

42 U.S.C. § 6972(a)(1)(B) (emphasis added). This language, Defendant argues, acts as a clear waiver of the federal government's sovereign immunity for purposes of citizen suits under RCRA. Def. Reply Br. at 6 (citing Smith v. Potter, 187 F. Supp. 2d 93, 97 (S.D.N.Y. 2001)). Defendant reasons that since a private citizen may bring suit against the EPA, Defendant should be able to join the EPA as an additional party. This position is not supported by the complete text of RCRA Section 7002 as explained more fully below.

Additionally, even though no action has been brought pursuant to Section 7002(a)(1)(A), Defendant asserts that the waiver provision of that section is also applicable in this case. Section 7002(a)(1)(A) of RCRA states in relevant part that

-7-

> any person may commence a civil action on his own behalf against any person (*including (a) the United States, and (b) any other governmental instrumentality or agency, to the extent permitted by the eleventh amendment to the Constitution*) who is alleged to be in violation of any permit, standard, regulation, condition, requirement, prohibition, or order which has become effective pursuant to this chapter

42 U.S.C. § 6972(a)(1)(A) (emphasis added). Defendant argues that this provision waives the EPA's immunity in this case because the "EPA threatens to violate this Court's Final Judgment by not acquiescing to the Court regarding remedy," reasoning that "if Honeywell were to commence its own citizen suit under Section 7002(a)(1)(A) against the EPA, the agency would not enjoy a sovereign immunity defense." Def. Reply Br. at 7 (citing United States v. Colorado, 990 F.2d 1565, 1578 (10th Cir. 1993); O'Leary v. Moyer's Landfill, 677 F. Supp. 807, 815 n.5 (E.D. Pa. 1988)).

Bearing in mind that waivers of immunity are to be strictly construed, this Court will consider whether RCRA Section 7002(a)(1)(A) and (B) constitute clear waivers of immunity in the context of the statutory provision as a whole and in light of the statute's relevant legislative history. First, the sections cited by Defendant do not indicate a clear waiver of immunity for cases in which parties wish to *join* the EPA. Rather, these provisions waive immunity where a citizen wishes to directly file suit against individuals acting in violation of RCRA. Notably, Defendant cites no cases in which the EPA or any other governmental agency has been joined as a party to a citizen suit after years of RCRA litigation. More importantly, this Court is unpersuaded by Defendant's contention that the EPA's immunity is waived by 7002(a)(1)(A) and (B) simply because Honeywell *could have* brought citizen suits against the EPA in alternate circumstances. Such a statutory interpretation does not satisfy the clear waiver requirement necessary to sue a governmental agency.

In addition, RCRA Section 7002(d) provides the EPA with a right to intervene in citizen

suits, evidencing congressional intent that such suits may proceed without the involvement of the EPA. This reading of 7002(d) is supported by the legislative history: the EPA "clearly does not have the resources to deal with all these sites . . . . Citizen suits to abate imminent hazards can expand the national effort to minimize these very real threats to our well-being." See 130 Cong. Rec. 29530 (July 25, 1984) (statement of Sen. Mitchell). A finding that the EPA may be forced to join any citizen suit brought pursuant to RCRA conflicts with the legislative history of 7002 because it is clear that Congress created citizen suits so that the EPA would not be forced to oversee the remediation of all hazardous waste sites.

### 2. APA § 702

Defendant argues that Section 702 of the Administrative Procedure Act ("APA") also waives the EPA's immunity. Section 702 of the APA states, in relevant part,

> [a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof . . . The United States may be named as a defendant in any such action, and a judgment or decree may be entered against the United States.

5 U.S.C. § 702. The waiver of immunity contained in Section 702 of the APA is applicable to suits in equity, including some suits that are not brought pursuant to the APA. See Johnsrud v. Carter, 620 F.2d 29, 31 n.3 (3d Cir. 1980). The Supreme Court has identified two requirements that must be satisfied by a party seeking review pursuant to Section 702 of the APA. "First, the person claiming a right to sue must identify some 'agency action' that affects him in the specified fashion." Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 882 (1990). Second, "the party seeking review under § 702 must show that he has 'suffer[ed] legal wrong' because of the challenged agency action 'within the meaning of a relevant statute.' " Lujan, 497 U.S. at 883. Specifically, the "plaintiff must

establish that the injury he complains of (*his* aggrievement, or the adverse effect *upon him*) falls within the 'zone of interests,' sought to be protected by the statutory provision whose violation forms the legal basis for his complaint." Id. (citing Clarke v. Sec. Indus. Assn., 479 U.S. 388, 396-97 (1987)) (emphasis in original).

In regard to the first Lujan requirement, Defendant cites the EPA's "decision to list the Diamond Alkali Superfund Site and to define it in a manner overlapping with the areas in the Hackensack River already subject to this Court's order" as the agency action that allegedly gives Honeywell the right to sue. Def. Reply Br. at 8. In regard to the second Lujan requirement, Defendant claims it may suffer injuries based on actions the EPA *may* take in regards to cleaning up the Hackensack River area. It is the finding of this Court that Defendant fails to show how its interests may have been "adversely affected or aggrieved" by an EPA action "within the meaning of the relevant statute." 5 U.S.C. § 702. Defendant's alleged harm is merely potential, based on actions that the EPA may take in the future. Honeywell has failed to show that it in fact has "suffered a legal wrong" due to the EPA's actions. See Lujan, 497 U.S. at 883. This does not satisfy the narrowly tailored waiver of immunity contained in APA Section 702.

In addition, the cause of action created by APA Section 702 is limited by APA Section 701(a)(1): no cause of action exists "to the extent the relevant statute 'preclude[s] judicial review." Block v. Cmty. Nutrition Inst., 467 U.S. 340, 345 (1984) (quoting 5 U.S.C. § 701(a)(1)). In this case, the EPA, arguing as *amicus curiae*, contends that CERCLA Section 113(h)'s bar against "pre-enforcement review" of response actions ordered by the EPA precludes judicial review within the meaning of APA Section 701(a)(1). See 42 U.S.C. § 9613(h). Specifically, CERCLA Section

113(h) precludes jurisdiction with respect to "any challenges to removal or remedial action selected under section [104 of CERCLA, 42 U.S.C. § 9604]." 42 U.S.C. § 9613(h).[1] CERCLA defines a "removal action" to include "such actions as may be necessary to monitor, assess and evaluate the release or threat of release of hazardous substances." 42 U.S.C. § 9601(23). The Third Circuit has found that an RI/FS, like the one being conducted in the Diamond Alkali (Newark Bay) Superfund Site satisfies the CERCLA definition of "removal action." Boarhead Corp. v. Erickson, 923 F.2d 1011, 1019 (3d Cir. 1991); accord Razore v. Tulalip Tribes of Washington, 66 F.3d 236, 239-40 (9th Cir. 1995). In particular, the Third Circuit found that the argument that §§ 702 and 703 of the APA provide plaintiffs with a right to judicial review of the EPA's actions "runs afoul of the plain language of § 113(h)." Id. at 1024. In Boarhead, the circuit court ultimately found that the district court did not have jurisdiction because "§ 113(h) of CERCLA deprive[d] [the district court] of the power to hear claims under the Preservation Act, or any other statute, that would interfere with the EPA's clean-up activities on a Superfund site." Id. Based on the Third Circuit's holding in Boarhead, it is evident that the APA provides no waiver of immunity when the CERCLA § 113(h) jurisdictional bar is implicated.

In response to the EPA's argument, Defendant questions whether this Court may retain jurisdiction over the Study Area 7 sediments in light of the EPA's RI/FS. Defendant argues that if this Court accepts the EPA's construction of CERCLA § 113(h), then it follows that this "Court

---

[1] There are five exceptions to the 113(h) jurisdictional bar; however, none are applicable in this case because they apply to "actions filed by the government or by a private citizen seeking to enforce or recover costs for the enforcement of CERCLA." Reardon v. United States, 947 F.2d 1509, 1512 (1st Cir. 1991) (en banc).

would lack jurisdiction over any sediments that are included within the boundaries of the Diamond Alkali Superfund Site." Def. Reply Br. at 9.  However, the cases cited by Defendant to support this position do not compel the conclusion that this Court lacks jurisdiction over the Study Area 7 sediments.  Unlike the case here, both Boarhead, 923 F.2d 1011, and Clinton County Commissioners v. United States EPA, 116 F.3d 1018 (3d Cir. 1997) involved suits in which the plaintiffs directly challenged actions taken by the EPA.  Here, Defendant does not threaten to interfere with the EPA's clean-up activities in the Hackensack River nor does Defendant challenge any actions taken by the EPA.  Furthermore, a finding that this Court lacks jurisdiction over the Study Area 7 sediments is inconsistent with the Third Circuit's interpretation of the jurisdictional bar contained in CERCLA § 113(h): "CERCLA's language shows Congress concluded that disputes about who is responsible for a hazardous site, *what measures actually are necessary to clean-up the site and remove the hazard* or who is responsible for its costs should be dealt with after the site has been cleaned up." Boarhead, 923 F.2d at 1019 (emphasis added).  At this point, the contamination in Study Area 7 and the surrounding areas has not been cleaned up; therefore, the questions regarding "what measures actually are necessary to clean-up the site and remove the hazard" need not be resolved at this stage. In fact, joining the EPA for the limited purposes of "selecting and implementing a remedy for contaminated sediments in the Hackensack River" frustrates "Congress's overall goal that CERCLA free the EPA to conduct forthwith clean-up related activities at a hazardous site." Id.  Further, "Congress enacted CERCLA so that the EPA would have the authority and the funds necessary to respond expeditiously to serious hazards without being stopped in its tracks by legal entanglement before, or during the hazard clean-up."  Id. (citing Wheaton Indus. v. United States EPA, 781 F.2d

354, 356 (3d Cir. 1986); Lone Pine Steering Comm. v. United States EPA, 777 F.2d 882, 886-87 (3d Cir. 1985), cert. denied. 476 U.S. 1115 (1986); Wagner Seed Co. v. Daggett, 800 F.2d 310, 314-15 (2d Cir. 1986)).

Finally, Defendant fails to persuade this Court that it should follow the Eastern District of Pennsylvania's holding in O'Leary v. Moyer's Landfill, Inc., 667 F. Supp. 807. O'Leary involved a RCRA citizen suit commenced prior to the enactment of CERCLA. The district court joined the EPA to the lawsuit and deferred to the EPA selecting and implementing a remedy under CERCLA. In deciding to join the EPA, the O'Leary court did not have the benefit of subsequent judicial interpretation of CERCLA because the statute had only recently been enacted at the time of the district court's decision. Thus, while the O'Leary court was correct in finding that a core purpose of CERCLA § 113(h) is to avoid delay in cleaning up hazardous waste sites, the court did not properly interpret the jurisdictional bar. It is the finding of this Court that the isolated holding of O'Leary is not consistent with the Third Circuit's interpretation of the jurisdictional bar or with congressional intent in enacting CERCLA. Thus, this Court will not follow the approach of the O'Leary court here.

### C. Unnecessary to Invite Appearance as *Amicus Curiae*

This Court denies Honeywell's alternative request that this Court "invite EPA to appear as *amicus curiae* for the purpose of selecting and implementing a sediment remedy." Pursuant to RCRA § 7002(d), EPA has a right to intervene in citizen suits like the case at bar. Thus, such an invitation is unnecessary.

**III.     CONCLUSION**

For the reasons stated, it is the finding of this Court that Defendant's motion to join the EPA is **denied** and Defendant's request to invite the EPA to appear as *amicus curiae* is also **denied**.  An appropriate Order accompanies this Opinion.

                                                                       S/ Dennis M. Cavanaugh
                                                                       Dennis M. Cavanaugh, U.S.D.J.

Date:           February  20 , 2007
Orig.:          Clerk
cc:             Counsel of Record
                File

-14-