NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| INTERFAITH COMMUNITY ORGANIZATION *et al.*, | : : : | **Hon. Dennis M. Cavanaugh** |
| Plaintiff, | : : | **OPINION** |
| v. | : : | Civil Action No. 95-cv-2097 (DMC) |
| HONEYWELL INTERNATIONAL INC. *et al.*, | : : : | |
| Defendants. | : : | |
| HACKENSACK RIVERKEEPER, INC., | : : | |
| Plaintiff, | : : | |
| v. | : : | Civil Action No. 05-cv-5955 (DMC) |
| HONEYWELL INTERNATIONAL, INC. *et al.*, | : : : | |
| Defendants. | : : | |

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter comes before the Court upon motion by Defendant Honeywell International, Inc.

("Honeywell" or "Defendant") to join the City of Jersey City, the Jersey City Department of Public

Works, the Jersey City Municipal Utilities Authority ("JCMUA"), the Jersey City Incinerator

Authority ("JCIA"), Degen Oil and Chemical Company, 100 Kellogg Street LLC, Jeremiah Healy

in his capacity as the Mayor of Jersey City, Oren K. Dabney in his capacity as the Director of the

JCMUA (collectively, the "Study Area 6 Defendants") for the limited purpose of determining the

remedy for contaminated sediments and deep groundwater pursuant to Federal Rule of Civil Procedure Rule 19.[1]  In the alternative, Honeywell moves to consolidate  this case with Jersey City Municipal Utility Authority v. Honeywell International, Inc., Civ. No. 05-5955 (the "Riverkeeper Litigation") pursuant to Federal Rule of Civil Procedure 42(a).  Pursuant to Rule 78 of the Federal Rules of Civil Procedure no oral argument was heard.  After carefully considering the submissions of the parties, and based upon the following, it is the finding of this Court that Honeywell's motion to join is **denied** and also that Honeywell's motion to consolidate is **denied**.

I.    BACKGROUND

        A.    **Procedural & Factual Background**

        This action was originally brought by five individual Plaintiffs under the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. 7002(a)(1)(B) against Defendant Honeywell and several other parties, seeking declaratory and injunctive relief mandating the cleanup of environmental contamination at Study Area 7, located in Jersey City, New Jersey.  See Interfaith Cmty. Org. v. Honeywell, Inc., 263 F. Supp. 2d 796, 802 (D.N.J. 2003), aff'd, 399 F.3d 248 (3d Cir.), cert. denied, 15 S.Ct. 2951 (2005).  This Court issued a decision concluding that the Site presents an imminent and substantial endangerment to health or the environment and finding that Honeywell was responsible for abating the hazard by cleaning up the Site.  Id.  The Court ordered Honeywell to, *inter alia*, "remedy all chromium contaminated sediments in the Hackensack River in the vicinity of [Study Area 7] containing chromium levels at or exceeding NJDEP's ERM toxicity

_____

    [1] Originally, Honeywell also sought to join individuals who own property within Study Area 5, namely, Inland Southeast Jersey City, LLC, Bob Ciasulli, New Jersey City University and Regnal Realty Co.  After the filing of Honeywell's motion to join, Honeywell and Plaintiffs reached an agreement which made it less likely that implementation of deep groundwater remedies will affect the property owners within Study Area 5.  Thus, Honeywell subsequently withdrew its motion as to the Study Area 5 Defendants.  See Defs. Reply Br. at 2.

screening level of 370 ppm." June 30, 2003 Order Entering Final Judgment, ¶3.  In addition, the

Final Judgment requires Honeywell to investigate the deep groundwater flowing from Study Area

5 across Study Areas 6 and 7 to determine whether such groundwater was discharging into the

Hackensack River, and if so, to take appropriate remedial measures.  Id. ¶ 4.  Additionally, the Final

Judgment ordered the appointment of a Special Master to oversee all aspects of the remediation and

to ensure timely compliance with a remediation schedule.  263 F. Supp. at 834.

       1.     Chromium Investigation

Since the entry of the Final Judgment, Honeywell, under the supervision of the Special

Master, has worked to delineate the extent of chromium contamination in the Hackensack River

sediments.  Defs. Br. at 7.  The results of this investigation were reported in a comprehensive

Sediment Investigation Report ("SIR") submitted to the Special Master on October 17, 2005.

According to the SIR, the sediments containing chromium in excess of 370 ppm are present in

Droyer's Cove (south of Study Area 6), along the shoreline adjacent to Study Areas 6 and 7, and in

a discrete area to the north of Study Area 6 known as the Deep Overburden Groundwater Discharge

Area.  See Henig-Elona Cert., at Ex A. (Offshore Sediment Investigation Report (Oct. 14, 2005)

(figures 4-1a, 4-1b & 4-1c) (showing sampling results for sediments in the vicinity of Study Areas

6 and 7).  Id.  Specifically, the Deep Overburden Groundwater Discharge Area is an area where a

plume of chromium contaminated groundwater originating on Study Area 5, crosses Study Areas 6

and 7, discharging to the Hackensack River.  Id.

       2.     Deep Groundwater Investigation

Also under the supervision of the Special Master, Honeywell has been investigating the deep

groundwater plumes.  Based on this investigation, Honeywell submitted a Groundwater Investigation

Report to the Special Master on March 3, 2006.  The report identifies two major plumes of contaminated deep groundwater: the Deep Overburden Plume and the Bedrock plume.  Both plumes appear to originate at the Home Depot site that is part of Study Area 5 and flow across Study Area 7 and portions of Study Area 6.

        3.    <u>Remedy</u>

The specific remedy that Honeywell will be required to conduct will be selected using the process set forth in the Restated Stipulated Order Approving Summary Remedial Action Work Plan, entered March 26, 2004, and the Second Amendment to the Restated Stipulated Order Approving Summary Remedial Action Work Plan, entered May 1, 2006.  Pursuant to these orders, Honeywell was required to submit an Interim Remedial Alternatives Analysis for the sediments ("Sediment RAA") to the Special Master and Plaintiff Interfaith Community Organization ("ICO") in July 2006, and was required to submit a Final Sediment RAA by December 5, 2006.  After Honeywell's submission of the final Sediment RAA, the parties must attempt to reach agreement on a sediment remedy.  If they cannot do so, the Special Master will submit his recommendations to the Court for a determination.  After a remedy has been selected, deadlines for design and implementation of the sediment remedy will be established.  Honeywell will be required to prepare and submit detailed design drawings and specifications in the draft and final form to the Special Master and ICO for review and comment.  Further, Honeywell will be required to obtain all necessary permit approvals prior to submission of the final design report to the Court.

    **B.**    **Riverkeeper Litigation**

Years after judgment was entered in this case, Hackensack Riverkeeper, *et al*., (collectively

-4-

the "Riverkeeper Plaintiffs") initiated a citizens' suit pursuant to Section 7002(a)(1)(B) of RCRA,

42 U.S.C. 6972 (a)(1)(B), to clean up twelve sites designated as Study Areas 5 and 6. Riverkeeper

Am. Compl. ¶¶1, 2. The Riverkeeper Plaintiffs brought suit against several defendants, including

the Study Area 6 Defendants and Honeywell. At this time, the Riverkeeper Litigation is still in the

preliminary stages of pretrial motions and discovery.

## II.   RULE 19 JOINDER

If feasible, a court must join a necessary party who has "an interest relating to the subject

matter of the action and is so situated that the disposition of the action in the person's absence may

. . . as a practical matter impair or impede the person's ability to protect that interest." Fed. R. Civ.

P. 19(a). The Supreme Court has established that necessary parties are "[p]ersons who not only have

an interest in the controversy, but an interest of such a nature that a final decree cannot be made

without either affecting that interest, or leaving the controversy in such a condition that its final

termination may be wholly inconsistent with equity and good conscience." Steel Valley Auth. v.

Union Switch and Signal Div., 809 F.2d 1006, 1011 (3d Cir. 1987) (quoting Shields v. Barrow, 58

U.S. 130, 139 (1854)). Furthermore, joinder is a fact sensitive question, to be decided in the context

of the particular litigation. See Id. (quoting Provident Tradesmens Bank & Trust Co. v. Patterson,

390 U.S. 102, 118 (1968)).

Here, Honeywell sets forth three main arguments to support its contention that the Study Area

6 Defendants are necessary parties to this action. Specifically, Honeywell contends that the Study

Area 6 Defendants are necessary parties to this action because (1) the final remedy ordered by the

Special Master in this case will effect their property interests; (2) they will be bound by the remedy

selected in this case; and (3) Honeywell is seeking or will seek contribution for the sediment remedy from them in the Riverkeeper Litigation.  Additionally, Honeywell broadly contends that remediation will occur more efficiently if these parties are joined at this time.

### A.    Study Area 6 Defendants' Interest as Property Owners

Honeywell claims that it is the law of the case that all land owners whose property is effected by the remediation process are necessary parties to this action. Defs. Br. at 12 n.1 (citing Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 816-17 (1988)).  Honeywell bases this argument on the fact that this Court previously ruled that a land owner who owned property located within Study Area 7 (the area at issue in this litigation) was a necessary party.  Hackensack Riverkeeper, Inc. v. Honeywell Int'l Inc., D.N.J. Civ. No. 00-1451 (consolidated with this case,) March 28, 2001 Order Adopting Report and Recommendation of Magistrate Judge; Defs. Ex. D ("ECARG Order").  Specifically, District Court Judge Greenaway adopted Magistrate Judge Haneke's report and recommendation that ECARG, Inc. must be joined as a necessary party because "Honeywell may be required to perform certain activities at the Site to remediate the chromate production waste." Id. at 16.  In joining ECARG, the Court reasoned that "the property owner is usually a necessary party pursuant to Rule 19(a)." Id. at 15.  Based on this language, Honeywell asks the Court to hold that necessary parties include all land owners on whose property Honeywell may be required to perform remedial activities. This Court refuses to make such a broad holding.

As stated above, joinder is a fact-sensitive inquiry.  Therefore, any factual distinctions between ECARG, Inc. and the parties Honeywell seeks to join at this stage are critically relevant.

-6-

It must be emphasized that ECARG, Inc. owned property in Study Area 7 - the land at issue in this litigation.  In contrast, the parties that Honeywell seeks to join in this motion are individuals who own property in Study Area 6 - an area that is the subject of a separate litigation.  Furthermore, throughout the post-judgment stages of this litigation, this Court never found it necessary to join land owners so that Honeywell could access their property for remediation purposes.  In fact, this Court entered an order requiring Honeywell to "diligently pursue agreements with adjacent property owners regarding access to Right-of-Ways (ROWs) to the north, south and east of the Study Area 7 Property, which are necessary for perimeter wall, roadway and swale development."  June 16, 2004 Order. As acknowledged in the parties' submissions, Honeywell has successfully been able to negotiate with property owners of land adjoining Study Area 7 in order to gain the necessary access for remediation studies.  Pls. Opp'n Br. at 14-15.

The law of the case doctrine does not compel the conclusion that all property owners whose land is effected by the clean-up are necessary parties to this litigation or the Special Master process. Further, as set forth more fully below, Honeywell has failed to show that the impact on these land owners' property is such that they have an indispensable interest in the post-judgment remedy of this action.

In addition to its law of the case argument, Honeywell also contends that the Study Area 6 Defendants are necessary parties because the final remedy by this Court will effect their property interests.  Specifically, Honeywell argues that the Study Area 6 Defendants' property interests will be effected because all of the remedies to be considered will require some "upland source control." Defs. Br. at 10.  According to Defendant's brief, "upland source controls" may include dredging and

capping, along with the staging of materials and sediments that goes along with it and that much of this activity will have to occur on the Study Area 6 Defendants' land. Id. at 11. Further, Defendant contends that these operations may require hazardous and undesirable operations. Id.

Defendant cites several cases, arguing that where remedial action will occur on an individual's property they must be joined to the case. Defs. Br. at 12 (citing Steel Valley Auth., 809 F.2d at 1014; Associated Dry Goods Corp. v. Towers Fin. Corp., 920 F.2d 1121, 1124 (2d Cir. 1990); Hoheb v. Muriel, 753 F.2d 24, 27 (3d Cir. 1985)). However, unlike the cases cited by Defendant, Honeywell's need to access the Study Area 6 Defendants' land is speculative and has not yet been established yet. As noted by Plaintiffs, it is "highly unlikely that [the remedies for the second deep overburden plume and the bedrock plume] will require Honeywell to access all of the [Study Area] 5 and 6 properties." Pls. Opp'n Br. at 13.

Additionally, as stated above, joinder is not necessary because Honeywell has been able to gain access to other property owners' land in the past. Moreover, Honeywell is not seeking to join all other individuals whose property may be effected by the final remedy. As Plaintiffs note, the "upland source controls" allegedly necessary for the deep groundwater remedies will require pumping wells outside Study Areas 5, 6 or 7; yet, Honeywell has failed to join the owners of the property that will allegedly be implicated. Id. at 13 (comparing Groundwater RAA figure 1-2 with Groundwater RAA figure 8-1). Similarly, the deep groundwater investigation conducted by Honeywell in relation to the Final Judgment in this case required activities to take place on property outside of Study Area 7; however, Honeywell never moved to join any of these property owners. See Pls. Opp'n Br. at 15.

-8-

The fact that the Study Area 6 Defendants own property in proximity to the land at issue in this litigation does not render them necessary parties to the remedy selection process. Thus, joinder is not appropriate as to the Study Area 6 Defendants merely because they own land that may be effected by the remediation process.

### B.     Study Area 6 Defendants' Interest in Remedy Selected

Additionally, Honeywell argues that joinder of the Study Area 6 Defendants is necessary because they will be bound by the remedy ordered in this case. The Amended Complaint in the Riverkeeper Litigation requests that the Court "order any remedy undertaken of the sites in Study Areas 5 and 6 be consistent with the existing remedy for the Roosevelt Drive In site and be brought under the supervision of Special Master Torricelli." Riverkeeper Am. Compl. at 41. Based on this request for relief in the Amended Complaint, Honeywell claims that the Study Area 6 Defendants will be bound by this Court's selection of sediment and groundwater remedies. Def. Br. at 13. In contrast, Plaintiffs argue that paragraph 37 of the Riverkeeper Complaint indicates that those plaintiffs are "seeking consistent remedies for different contamination," not "the same remedies for the same contamination." Pls. Opp'n Br. at 22.

This Court is not persuaded that the Riverkeeper Plaintiffs' request for relief requires joinder of the Study Area 6 Defendants. First, it is not even certain that this Court will grant the Riverkeeper Plaintiffs' requested relief; therefore, it is mere speculation that the Study Area 6 Defendants' rights will be affected by the outcome of this case. More broadly, an individual is not a necessary party merely because a court's decision in another case may affect their rights in their own case. Second, the Study Area 6 Defendants are not unable to protect their own interests because they have the

opportunity to litigate the appropriate remedy in the Riverkeeper Litigation.  Simply put, they are not necessary parties as defined by Rule 19 because their absence will not "impair or impede [their] ability to protect [their] interest" regarding liability and/or the remedy selected in the Riverkeeper Litigation. Thus, joinder is not appropriate as to the Study Area 6 Defendants in light of the Riverkeeper Plaintiffs' request that the relief granted in that case is consistent with the remedy in this case.


C.      **Study Area 6 Defendants' Interest in Light of Honeywell's Claims for Contribution**

Equally unpersuasive is Honeywell's argument that the Study Area 6 Defendants have an interest in this action because Honeywell is seeking contribution for the sediment remedy from them. Id.  Specifically, Honeywell has filed cross-claims and counterclaims in the Riverkeeper Litigation seeking contribution from *inter alia* the Study Area 6 Defendants, claiming that they contributed to the contamination of the Hackensack River area.  See Honeywell International Inc.'s Answer with Affirmative Defenses and Crossclaims, at Crossclaim ¶¶ 25-45, Hackensack Riverkeeper, Inc. v. Honeywell International, Inc., No. 06-0022 (D.N.J. 2006).  Therefore, Honeywell argues, the Study Area 6 Defendants have a substantial interest in the remedy selected in this case because they may be required to contribute to the cost of it.

The Court refuses to join the Study Area 6 Defendants on this basis because these claims for contribution are mere allegations that Honeywell is entitled to payment from the Study Area 6 Defendants - it unclear to this Court whether these are even viable claims.  Additionally, this Court

has already found that Honeywell is the responsible party for the clean-up of Study Area 7; therefore, complete relief *can* be granted in the Study Area 6 Defendants' absence, even if this Court ultimately finds Honeywell is entitled to contribution from the Study Area 6 Defendants. And, similar to the analysis set forth above, the Study Area 6 Defendants are able to protect their own interests, even if they are not joined to this action, because they will have the opportunity to litigate the contribution claims against them in the Riverkeeper Litigation.

In sum, Honeywell has failed to persuade this Court that the Study Area 6 Defendants are necessary parties, as defined by Rule 19(a). While the Study Area 6 Defendants will most likely be affected by the remedy selected in this case, they do not have an interest in the remedy such that joinder is necessary.

## III.   POST-JUDGMENT JOINDER PURSUANT TO RULE 21

The Federal Rules of Civil Procedure allow for post-judgment joinder of parties. See Fed. R. Civ. P. 21 (stating that "[p]arties may be dropped or added by order of the court on motion of any party or of its own initiative at *any stage* of the action and on such terms as are just") (emphasis added). However, post-judgment joinder is appropriate only in very rare circumstances. See The Crude Co. v. United States Dep't of Energy, 189 F.R.D. 1 (D.D.C. 1999) (stating that post-judgment joinder is possible in certain limited circumstances). Here, Honeywell agues that "it is only at this stage in the litigation that the [Study Area 6] Defendants' participation becomes crucial because . . . [n]ow that the process of implementing the Final Judgment has moved to remedy selection, the interests of the [Study Area 6] defendants [sic] are directly at stake." Def. Br. at 16. Honeywell claims that joining the Study Area 6 Defendants before their liability has been established is a sound

decision because it will not cause additional costs, undue delay and will expedite the remediation process.  Id. 17-18.

In response, Plaintiffs argue strenuously that joining the Study Area 6 Defendants at this stage will delay remediation of the Study Area 7 sediments and groundwater.  Pls. Opp'n Br. at 2. Plaintiffs set forth two main reasons why joinder of the Study Area 6 Defendants will cause delay in the remediation process. First, if the court allows joinder, it will take months for the Study Area 6 Defendants to "retain expert witnesses and become educated regarding the sediment and groundwater issues."  Id. at 3; see also JCIA and JCMUA's Opp'n Br. at 7.  Plaintiffs contest Honeywell's argument that the Study Area 6 Defendants may become "full participants" in the Special Master process with only a few months to review the sediment and groundwater materials amassed over years of study and investigation regarding Study Areas 5, 6 and 7.  Second,  Plaintiffs contend that the addition of ten new parties will disrupt the "generally collegial" Special Master process.  Id. at 4.  Plaintiffs emphasize that in determining whether to join the Study Area 6 Defendants, this Court must also consider the "interest of the courts and the public in complete, consistent and efficient settlement of controversies."  Provident Tradesmen Bank & Trust Co., 390 U.S. at 111.

The Court is seriously concerned about causing any additional delay in the remediation process.  While Honeywell argues that non-joinder will delay the remediation process, its claims are based on mere speculation and predictions that the Study Area 6 Defendants will object to the remedy selected by the Special Master process.  In contrast, Plaintiffs and the Study Area 6 Defendants correctly point out that if this Court grants Defendant's joinder motion, both delay and

undue prejudice will surely result.  As stated above, the Study Area 6 Defendants will be forced to review thousands of documents, amassed over years of litigation in order to be fully apprised of the remedy selected in relation to the contamination at Study Area 7.  This would impose an unnecessary and unfair burden on the Study Area 6 Defendants and undoubtedly delay the selection of the final remedy for several months.  Thus, even though this Court may join parties during the post-judgment stage, joining the Study Area 6 Defendants in this case would not advance the interests of efficiency or justice.

## IV.    RULE 42(a) CONSOLIDATION

Pursuant to Rule 42(a) "[w]hen actions involving a common question of law or fact are pending before the court . . . it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay."  Fed. R. Civ. P. 42(a).  In light of this Court's concern about efficiency and undue prejudice, it will not use its discretion to consolidate the instant matter with the Riverkeeper Litigation.

## V.    CONCLUSION

For the reasons stated, it is the finding of this Court that Honeywell's motion for joinder is **denied** and that Honeywell's motion to consolidate is also **denied**.  An appropriate Order accompanies this Opinion.


                 S/ Dennis M. Cavanaugh
                Dennis M. Cavanaugh, U.S.D.J.

Date:        March  7 . 2007
Orig.:       Clerk
cc:         Counsel of Record
            The Honorable Patty Shwartz, U.S.M.J.
            File