## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| INTERFAITH COMMUNITY ORGANIZATION, *et al.*,<br><br>     Plaintiffs,<br><br>  v.<br><br>HONEYWELL INTERNATIONAL, INC., *et al.*,<br><br>     Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

*Document Filed Electronically*

Civ. No. 95-2097 (JLL-PS)

| | |
|---|---|
| HACKENSACK RIVERKEEPER, INC., *et al.*,<br><br>     Plaintiffs,<br><br>  v.<br><br>HONEYWELL INTERNATIONAL, INC., *et al.*,<br><br>     Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Civ. No. 06-22
*Consolidated under Civ. No. 05-05955 (JLL-JAD)*

## HONEYWELL INTERNATIONAL INC.'S BRIEF IN OPPOSITION TO PLAINTIFFS' APPLICATION FOR AND BRIEF IN SUPPORT OF AN AWARD OF THE 2012-2013 ATTORNEYS' FEES AND EXPENSES

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ....................................................................................1

II.   STATEMENT OF THE CASE ................................................................4

    A.    Honeywell Diligently Implemented the Environmental Cleanups that Are the Subject of these Fee Applications....................4

    B.    The Post-Judgment/Post-Decree Monitoring Work in 2012 and 2013 Was Not Excessive or Legally Complicated..................................................................................8

III.  PLAINTIFFS' REQUEST FOR FEES AND EXPENSES MUST BE REDUCED BECAUSE IT CONTAINS EXCESSIVE, DUPLICATIVE, AND NON-REIMBURSABLE TIME. ........................9

    A.    It Is Plaintiffs' Burden to Prove Reasonableness of All Fees and Expenses Requested in their Fee Application. ....................10

    B.    While Plaintiffs Concede Certain Percentage Reductions for Bruce Terris and Intra-Office Conferencing Time, Those Reductions Are Inadequate...................................................12

        1.    Bruce Terris's Non-Intra-Office Conferencing Time Should Be Reduced By 86% Based on Unreasonable Oversight Time................................................13

        2.    Plaintiffs' Intra-Office Conferencing Should Be Reduced by 50% Based On Particularly Excessive Conferencing in Preparation for and as Follow-Up to Special Master Meetings.......................................................16

    C.    Plaintiffs' Fee Application Contains Additional Categories of Fees and Expenses that Are Unreasonable and Therefore Require a Reduction..................................................20

        1.    The Terris Firm's Excessive and/or Duplicative Time Spent on Technical Matters Is Unreasonable. ................21

2.    Attorney and Paralegal Time Spent on Clerical and Administrative Tasks Is Not Reimbursable. ............................24

3.    The Terris Firm Cannot Justify Reimbursement for Time Spent Preparing its Fee Submissions.............................26

4.    The Terris Firm Cannot Be Reimbursed for Block-Billed Time Spent "Attending" Special Master Meetings That Is Not Ascertainable. .......................................27

5.    Plaintiffs' Fees for Non-Working Travel Are Excessive and Unreasonable. .................................................29

6.    Plaintiffs' Experts' Clerical and Administrative Time and Certain Expenses Are Not Reasonable or Reimbursable. ............................................................................29

7.    Certain Terris Firm Expenses Are Not Reimbursable. ............................................................................31

IV.    **CONCLUSION** ....................................................................................32

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Brown v. Fairleigh Dickinson Univ.*,
  560 F. Supp. 391 (D.N.J. 1983) ....................................................................27

*Halderman by Halderman v. Pennhurst State Sch. & Hosp.*,
  49 F.3d 939 (3d Cir. 1995)...................................................................10, 29

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983)....................................................................................24

*In re Olsen*,
  884 F.2d 1415 (D.C. Cir. 1989) ...................................................................17

*Maldonado v. Houstoun*,
  256 F.3d 181 (3d Cir. 2001).................................................................. 10, 11

*Missouri v. Jenkins*,
  491 U.S. 274 (1989)................................................................................25, 31

*Palmer v. Rice*,
  No. Civ.A.76-1439, 2005 WL 1662130 (D.D.C. July 11, 2005) ......................25

*Pennsylvania v. Del. Valley Citizens' Council for Clean Air*,
  478 U.S. 546 (1986)....................................................................................10

*Pub. Interest Research Grp. of N.J., Inc. v. Widnall*,
  No. 90-2138 (CSF), 1995 WL 836144 (D.N.J. Nov. 13, 1995) .............14, 16, 17

*Pub. Interest Research Grp. of N.J., Inc. v. Windall*,
  51 F.3d 1179 (3d Cir. 1995)...................................................................10, 11

*Rode v. Dellarciprete*,
  892 F.2d 1177 (3d Cir. 1990)............................................................ 10, 24, 28

*Salazar v. District of Columbia*,
  __ F. Supp. 2d __, 2014 WL 342084 (D.D.C. Jan. 30, 2014) .......................... 17

*Sheffer v. Experian Info. Solutions, Inc.*,
  290 F. Supp. 2d 538 (E.D. Pa. 2003)......................................................25, 30

*Student Pub. Interest Research Grp. of N.J., Inc. v. Monsanto*,
727 F. Supp. 876 (D.N.J. 1989) ...................................................................29, 30

*Ursic v. Bethlehem Mines*,
719 F.2d 670 (3d Cir. 1983)..................................................................14, 15

**STATUTES**

42 U.S.C. § 6901.........................................................................................1

## I.    INTRODUCTION

Plaintiffs' most recent Fee Application does not raise questions as to Honeywell's continued commitment to resolution of its environmental obligations in New Jersey, or whether Plaintiffs' counsel, Terris Pravlik & Millian, LLP (the "Terris Firm"), is entitled to reasonable attorneys' fees and expenses for its post-judgment and post-decree monitoring work in 2012 and 2013.  The question before this Court is rather:  What constitutes reasonable attorneys' fees?

There has been simply no incentive for the Terris Firm and its customary local counsel – who have litigated over 60 cases together in New Jersey over the past 29 years – to change a pattern of practice that they believe is not broken; namely, to run up thousands of hours of unreasonable fees and expenses despite "special expertise" that they have argued in the past warrants an exception to the forum rate rule justifying higher Washington, D.C. hourly rates.  *See, e.g.*, Pls' App. for and Br. in Supp. of an Award of Disputed Fees and Expenses for their 2009 Post-Judgment and Post-Decree Work (Dec. 16, 2010), Case No. 05-5955, ECF No. 331-1at 16.  Honeywell does not dispute Plaintiffs' right to counsel of their choosing or reimbursement of reasonable attorneys' fees.  However, a standard for reasonable fees and expenses must be monitored by this Court in accordance with binding precedent and the policies underlying the Resource Conservation and Recovery Act, 42 U.S.C. § 6901 *et seq.* ("RCRA").

In particular, with regard to the pending Fee Application, Plaintiffs generated nearly $1.9 million in attorneys' fees and expenses for post-judgment/decree monitoring work before the Special Master in 2012 and 2013. *See* Pls' App. for and Br. in Supp. of an Award of the 2012-2013 Attorneys' Fees and Expenses ("Fee Application") (Apr. 1, 2014), ECF No. 1231,[1] at 13-14. This work did not involve traditional litigation – such as the depositions, document production, review, and management, and expert reports at issue in a large portion of the Remanded Fees recently reviewed by this Court. In fact, much of this work is not even legal in nature but instead primarily involves the technical monitoring of Honeywell's remediation of the subject sites. And yet Plaintiffs' counsel spent excessive amounts of time, often by multiple attorneys and far disproportionate to the amount of time spent on the same project by their experts.

Plaintiffs concede a 15% reduction for "Bruce Terris Time" and a 20% reduction for "Intra-Office Conferencing Time," *see* Pls' Am. Ex. 4, ECF No. 1257-1, consistent with the Special Master's Report and Recommendation on Remanded Fees (May 19, 2014), ECF No. 1251 ("Report and Recommendation").[2]

---

[1] Unless otherwise indicated, all references to electronically filed documents in these matters refer to documents filed in the consolidated Case No. 95-2097.

[2] Plaintiffs claim in Amended Exhibit 4 to their Fee Application that they are requesting only $1.29 million in their Fee Application based on reductions for "Bruce Terris Time" and "Intra-Office Conferencing Time," as well as consideration of Honeywell's prior payment of a portion of undisputed fees for 2012. *See* Pls' Am. Ex. 4. Any award on this Fee Application should be offset by

Footnote continued on next page

However, as set out more fully below, Plaintiffs, through their Fee Application and the exhibits thereto, have not met their burden in substantiating the reasonableness of the remaining 85% of "Bruce Terris Time" and 80% of "Intra-Office Conferencing Time," respectively, such that the reductions made by the Special Master to the Remanded Fees are appropriate here.  Moreover, Plaintiffs have not met their burden in substantiating *in toto* other categories of time, and thus additional reductions are warranted.

Accordingly, Honeywell respectfully requests that the Court deny Plaintiffs' 2012-2013 Fee Application as submitted, finding that substantial portions of hours and expenses sought by the Terris Firm should be reduced or disallowed as set forth herein and as supported by the expert report of Steven A. Tasher dated June 27, 2014, attached hereto as Exhibit 1 (hereinafter, the "Tasher Report").[3]

---

Footnote continued from previous page
Honeywell's prior payment of undisputed fees for 2012, as well as any other payments Honeywell may make on these Fees.

[3] As reflected in his Report and accompanying CV, Mr. Tasher spent his legal career handling or supervising major litigation, including a considerable portion of time on matters pertaining to the investigation, design and remediation of complex environmental issues throughout the United States and internationally.  *See* Tasher Report  at 2-3 & Ex. A.  Mr. Tasher is an expert in the field of assessing and evaluating the reasonableness of attorneys' fees.  *Id*.

## II.    STATEMENT OF THE CASE

### A.    Honeywell Diligently Implemented the Environmental Cleanups that Are the Subject of these Fee Applications.

In 1995, Interfaith Community Organization, represented by the Terris Firm brought suit under RCRA seeking the environmental cleanup of what has become known as Study Area 7 in Jersey City, New Jersey.  *See Interfaith Community Organization v. Honeywell*, Case No. 95-2097 (the "*ICO*" or "Study Area 7" litigation).  In June 2003, this Court issued its Final Judgment in the *ICO* matter, requiring Honeywell, *inter alia*, to excavate Study Area 7.  *See* Order of Final Judgment (June 30, 2003), ECF No. 356.

Under the supervision of the Special Master, Honeywell excavated approximately 1.3 million cubic yards of chromium ore processing residue ("COPR") from Study Area 7.  The excavation was completed safely and timely. Honeywell also constructed a groundwater treatment plant and collection system which is intercepting and treating deep contaminated groundwater, and Honeywell obtained permits to initiate sediment remediation in 2012 and that sediment remediation was completed in 2013 with the exception of a few deferred areas.

In 2005, the Jersey City Municipal Utilities Authority ("JCMUA") and the Jersey City Incinerator Authority ("JCIA"), represented separately by New Jersey counsel, filed complaints against Honeywell regarding chromium contamination on

- 4 -

properties they owned, now known as Study Area 6 North.[4]  In 2006, the

Riverkeeper, represented by the Terris Firm, filed its own complaint, also

addressing Study Area 6 North, as well as nearby areas known as Study Area 6

South and an area east across Route 440 known as Study Area 5.  Collectively,

these cases were consolidated under the caption *Jersey City Municipal Utilities*

*Authority v. Honeywell*, Case No. 05-5955 (the "*JCMUA*" or "Study Areas 5/6"

litigation).  These cases involved the same environmental statute, the same

contaminant, and the same general geographical area as the Study Area 7 case

where Honeywell's liability had already been established.

Even before the Study Areas 5/6 litigation was filed, Honeywell expended

significant effort with Jersey City and state entities to reach agreement on

environmental clean-up efforts.  Beginning in 2004, Honeywell spent millions of

dollars to acquire the Study Area 6 South properties.  In 2003, Honeywell and New

Jersey City University ("NJCU") reached an agreement on the remediation of the

Study Area 5 NJCU property.  *See* Indemnity and Remediation Agreement (Dec.

2003), ECF No. 1037-12.  Honeywell worked with NJCU to integrate an

environmental remedy into NJCU's design of its new "West Side Campus."  In this

regard, Honeywell obtained an approved remedy for the NJCU property on July

---

[4] *See* Compl. (Dec. 23, 2005), Case No. 05-05955, ECF No. 1 ("JCMUA Complaint"); Compl. (Dec. 28, 2005), Case No. 05-05993, ECF No. 1 ("JCIA Complaint").

25, 2007, before any consent decree with Plaintiffs.  *See* Consent Decree Regarding Remediation of the New Jersey City University Redevelopment Area (Jan. 21, 2010), Case No. 05-5955, ECF No. 302 ("NJCU Consent Decree"), at ¶ 33.  The NJCU cleanup began in 2010 and was completed in 2011.

Beginning in 2006, Honeywell also entered into negotiations with Jersey City to find a way to acquire Study Area 6 North and coordinate the remediation work with the much-needed redevelopment of Jersey City's west side.  Those intense negotiations continued for some time under the supervision of the late Justice Daniel O'Hern and ultimately resulted in the Jersey City Consent Order entered in this litigation.  *See* Settlement Consent Order by and Between the Jersey City Entities and Honeywell International Inc. (Apr. 21, 2008), Case No. 05-5955, ECF No. 201 ("Jersey City Consent Decree").

In February 2008, the New Jersey Department of Environmental Protection ("NJDEP") approved a remedy for Study Area 6 North.  *See* Consent Decree Regarding Remediation and Redevelopment of Study Area 6 North (Apr. 21, 2008), Case No. 05-5955, ECF No. 202 ("Study Area 6 North Consent Decree"), at ¶ 54(a).  That approved remedy, in conjunction with the Jersey City Consent Decree, provided the backbone for settlements with Plaintiffs in the Study Areas 5/6 litigation.  The NJDEP-approved remedy and the Jersey City decree

established the following settlement principles around which virtually all consent decrees have been structured:

- Based on NJDEP-approved guidelines, soils containing greater than 20 ppm hexavalent chromium in areas slated for future residential redevelopment would be excavated to depths of up to 20 feet;

- Areas slated for future open space (or other nonresidential) use would be capped;

- Honeywell would acquire the Study Area 6 North properties and partner with Jersey City in the creation of a 100 acre Bayfront Redevelopment Area that included Study Areas 6 South and 7; and

- Together, Honeywell and Jersey City would work to build an environmentally-friendly "live where you work" new development known as Bayfront that will revitalize Jersey City's west side.

*See* Jersey City Consent Decree; Study Area 6 North Consent Decree.

With this foundation in place, Honeywell, Jersey City, and Plaintiffs proceeded to negotiate the remaining ancillary issues for the Study Areas 5/6 sites resulting in various subsequent consent decrees. *See, e.g.*, Order/Consent Decree Regarding Remediation and Redevelopment of Study Area 6 South (Dec. 29, 2008), Case No. 05-5955, ECF No. 234; Order/Consent Decree Regarding Sites 79 and 153 South (Jan. 21, 2010), Case No. 05-5955, ECF No. 301; NJCU Consent Decree; Order/Consent Decree Regarding Remediation of the Study Area 5 Groundwater and Site 79 Residential Properties (Jan. 21, 2010), Case No. 05-5955, ECF No. 303.  Since resolution of the Study Areas 5/6 litigation, the parties have

- 7 -

focused their efforts singularly on post-judgment/post-decree monitoring of Study Areas 5, 6 and 7.

### B.     The Post-Judgment/Post-Decree Monitoring Work in 2012 and 2013 Was Not Excessive or Legally Complicated.

The post-judgment/post-decree monitoring work in 2012 and 2013 that is the subject of Plaintiffs' pending Fee Application primarily consisted of oversight of ongoing sediment remediation in Study Area 7 and the finalization of Study Area 6 remediation specifications. This work did not entail any major departures from the principles established in the previously negotiated consent decrees. The parties continued to attend routine Special Master meetings, which take place every month (alternatively held in-person and by telephone conference), average about 1-2 hours in length, and address largely procedural matters. Otherwise, the additional legal work during this timeframe included only the occasional minor amendment of the various consent decrees due to changed circumstances.

Thus, although the work conducted by Honeywell's engineering team and experts may have been technically complex, the legal issues in 2012 and 2013 were not – as illustrated by Honeywell's staffing of these matters by one partner and one associate. Plaintiffs' Fee Application, on the other hand, tell a different tale. For example, the Terris Firm's claimed total fees and expenses for 2012 and 2013 was roughly $1,894,330. *See* Pls' Am. Ex 4. By comparison, Special Master Torricelli, his counsel, a team of two partners and two associates at the law firm

- 8 -

Connell Foley LLP, as well as his technical advisors, several engineers from the environmental consulting firm, the Louis Berger Group, generated approximately half that amount, or $1,010,296.[5]  As such, it is no surprise that Plaintiffs' Fee Application contains excessive and duplicative time and expenses warranting reduction.

### III.   PLAINTIFFS' REQUEST FOR FEES AND EXPENSES MUST BE REDUCED BECAUSE IT CONTAINS EXCESSIVE, DUPLICATIVE, AND NON-REIMBURSABLE TIME.

Plaintiffs' Fee Application requests $1,381,378.45 in fees and $512,951.22 in expenses.  It is Plaintiffs' burden to prove the reasonableness of these fees and expenses.  Moreover, while Plaintiffs have conceded certain reductions for two of the categories of fees (Bruce Terris time and Intra-Office Conferencing time), in deference to the Special Master's Report and Recommendation on Remanded Fees, those reductions are the *minimum* for those two categories of fees; as set forth herein and in the accompanying expert report, the reductions for these categories of fees must be higher and certain other categories of fees must also be reduced.

---

[5] *See* Orders granting Motion for Disbursement of Funds for January through December 2012, ECF Nos. 1123, 1126, 1133, 1134, 1136, 1142, 1147, 1148, 1152, 1153, 1159, 1162 (totaling $521,500 for 2012); Orders granting Motion for Disbursement of Funds for January through December 2013, ECF Nos. 1165, 1169, 1170, 1175, 1179, 1183, 1187, 1193, 1199, 1201, 1209, 1213 (totaling $488,796 for 2013).

### A.    It Is Plaintiffs' Burden to Prove Reasonableness of All Fees and Expenses Requested in their Fee Application.

In assessing the reasonableness of a claimed fee in cases like this, the courts use the "lodestar" formula, which requires multiplying the number of hours reasonably expended by a reasonable hourly rate. *Maldonado v. Houstoun*, 256 F.3d 181, 184 (3d Cir. 2001). "When the applicant for a fee has carried his burden of showing that the claimed rates and number of hours are reasonable, the resulting product is presumed to be the reasonable fee to which counsel is entitled." *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 564 (1986) (internal quotation omitted).

In calculating the hours reasonably expended, a court should "review the time charged, decide whether the hours set out were reasonably expended for each of the particular purposes described and then exclude those that are 'excessive, redundant, or otherwise unnecessary.'" *Maldonado*, 256 F.3d at 184 (quoting *Pub. Interest Research Grp. of N.J., Inc. v. Windall*, 51 F.3d 1179, 1188 (3d Cir. 1995)) (other citations omitted). Thus, this Court has "a positive and affirmative function in the fee fixing process, not merely a passive role." *Id.*

In a RCRA action, it is the plaintiff's burden to show that "the hours it claims are reasonable." *Id.* (citing *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990)); *Halderman by Halderman v. Pennhurst State Sch. & Hosp.*, 49 F.3d 939, 943 (3d Cir. 1995) ("The burden of proof is on the party claiming

- 10 -

reimbursement."). "Hours that would not generally be billed to one's own client are not properly billed to an adversary." *Windall*, 51 F.3d at 1188 (citation omitted); *see Maldonado*, 256 F.3d at 186 (a court should exclude hours that would be unreasonable to bill to a client, irrespective of counsel's experience, skill or reputation).

It is clear that the Terris Firm's client does not review its bills to ensure reasonableness. *See* Condensed Tr. of Mar. 10, 2011 Dep. of Captain William V. Sheehan at 90-91 ("I'm not paying for them . . . . Because, you know, if I was paying for it, damn straight I would want to see them."). Thus, the Terris Firm's claim that it only seeks reimbursement for expenses "counsel normally bills to its fee-paying clients and, in this case, would have billed to plaintiffs if they had been paying fees," *see* Pls' Fee App. at 13, rings hollow. Moreover, the Terris Firm's suggestion that it is Honeywell and/or the Court's responsibility to ensure the reasonableness of the Terris Firm's fees is patently unfair, particularly when Honeywell has to pay its own legal fees, the Terris Firm's *reasonable* fees, and – if the Terris Firm has its way – the entirety of the Special Master's fees for a such a review. *Cf.* Pls' Proposed Findings of Fact & Conclusions of Law (Mar. 14, 2014), ECF No. 1219 ¶ 27 ("[C]lient oversight of counsel's monthly invoices is replaced by the scrutiny of every expenditure of time and every out-of-pocket expense by

- 11 -

Honeywell and the district court.").  The burden to prove the reasonableness of its fees lies with the Terris Firm and no one else.

**B.     While Plaintiffs Concede Certain Percentage Reductions for Bruce Terris and Intra-Office Conferencing Time, Those Reductions Are Inadequate.**

In his Report and Recommendation on Remanded Fees, the Special Master found a 15% reduction in Mr. Terris's time and a 20% reduction in Intra-Office Conferencing time appropriate.  *See* Report and Recommendation at 21, 24.  However, those conclusions were admittedly based on, among other things, "the records provided and the activities I find are reasonable and those that are not."  *Id.* at 21; *see also id.* at 24.  Thus, while Plaintiffs' concession of a certain baseline reduction for Mr. Terris's time and Intra-Office Conferencing time is appropriate given the excessive and unreasonable nature of this time, that baseline should not provide the Court with a definitive reduction amount since it is not based on the time records ***for the fees at issue in this Fee Application***.  As set out fully below, based on the time records in Plaintiffs' pending Fee Application and Mr. Tasher's expert opinion, Mr. Terris's time should be reduced by 86% and the Firm's Intra-Office Conferencing time should be reduced by 50%.

**1.    Bruce Terris's Non-Intra-Office Conferencing Time Should Be Reduced By 86% Based on Unreasonable Oversight Time.**

Bruce Terris billed a total of over $61,000 during 2012 and 2013.  A large portion of that time was spent conferring, as addressed *infra* at Section III.B.2; in fact, he only billed approximately 22 hours of fees *over two years* to work spent outside of conferring with his colleagues.  *See* Pls' Am. Ex. 4 at n.3 (calculating Mr. Terris's non-conferencing time as totaling only $16,855.85).  Yet he spent a large majority of that time, 19 hours or $14,567.64 in fees, (a) reviewing work by other senior partners at the firm, (b) reviewing work by associates that had already been reviewed by other senior partners at the firm, and (c) reviewing work solely to ensure consistency between the Honeywell matter and other matters at the firm (together, "Oversight Time").[6]  *See* Tasher Report, Ex. B (where Oversight Time is coded red); *see also, e.g.*, Pls' Fee App. Ex. 7 at 97 (Line Entry Nos. 1345-47) (time spent editing letter also reviewed by both other senior named partners of the firm); *id*. at 24 (Line Entry No. 325) (.783 hours on "Edit pl. comments on work plan; review experts' comments," also reviewed by another senior partner);  *id*. at 93 (Line Entry No. 1286) (.417 hours on "Edit letter to Special Master re monitoring and institutional controls," also reviewed by another senior partner); *id*.

---

[6] Ms. Millian affirms that "[t]hroughout the Study Areas 5-7 cases, [Mr. Terris] reviewed all of the written material," presumably without regard to whether the written material had already been reviewed by another partner. *See* Aff. of Kathleen Millian, Pls' Fee App. Ex. 1 ("Millian Aff."), at ¶ 12.

- 13 -

at 38 (Line Entry No. 514) (.233 hours on "Read Bell report; edit letter to SM," also reviewed by both other senior partners); *id.* at 63 (Line Entry No. 862) (1.017 hours on "Read def and pl e-mails to SM; edit letter to SM," also reviewed by another senior partner).[7]

These types of time entries were found to be unreasonable by the Special Master in his review of the Remanded Fees. Specifically, the Special Master concluded that (a) "it is not reasonable for Honeywell to pay for Mr. Terris, who bills an hourly rate of $709, [now $772,] to review every paper that goes out of the office"; (b) "it is not appropriate or reasonable for Honeywell to pay for Mr. Terris to review an associate's work where another partner reviewed it or review another's partner's work"; and (c) "it is not reasonable for Honeywell to pay for Mr. Terris's work reviewing consent decrees in this case and comparing them to a review of consent decrees in other unrelated cases for office consistency." Report and Recommendation at 20.[8]

---

[7] Herein throughout, and in the Tasher Report, are examples of specific objectionable time narratives to guide the Court in reviewing Plaintiffs' Fee Application. These narratives are non-exhaustive exemplars of the types or categories of fees and expenses to which Honeywell objects.

[8] Case law also supports finding Mr. Terris's "oversight" time to be unreasonable. In *Widnall*, the Terris Firm also required Mr. Terris to review all submissions, such that the firm was billing an "exorbitant" amount of time for drafting, revising, editing, and incorporating edits. *See Pub. Interest Research Grp. of N.J., Inc. v. Widnall*, No. 90-2138 (CSF), 1995 WL 836144, at *6 (D.N.J. Nov. 13, 1995). The *Widnall* Court reduced time spent by Mr. Terris in a supervisory capacity. *Id.* at **6-7. By the same accord, the Terris Firm should not be entitled to collect fees from Honeywell for running every single piece of paper or decision by Mr. Terris. *Cf. Ursic v. Bethlehem Mines*, 719 F.2d 670, 677 (3d Cir. 1983) ("A fee applicant

Footnote continued on next page

- 14 -

Plaintiffs have not – and cannot – distinguish these types of fees in the pending Fee Application from those that were found to be unreasonable by the Special Master in his Report and Recommendation; this is why Plaintiffs have conceded a 15% reduction in Mr. Terris's time entries. *See* Pls' Am. Ex. 4. However, it is unreasonable for only a 15% reduction of time to be applied when more than 15% of Mr. Terris's time entries reflect time spent reviewing an associate's work where another partner reviewed it, reviewing another partner's work, passively reviewing every piece of paper that goes out of the office, or ensuring consistency between this matter and other non-Honeywell-related matters. Plaintiffs have not provided any justification for why Mr. Terris's secondary senior partner review and/or passive oversight was necessary. Therefore, none of this Oversight Time is reimbursable.

As explained in the Tasher Report, 86%, or $14,567.64, of Mr. Terris's non-Intra-Office Conferencing time entries were reflective of the type of time found to be unreasonable by the Special Master in his Report and Recommendation. *See* Tasher Report at 8-9. Accordingly, Plaintiffs' Fee Application should be reduced by $14,567.64, which amounts to 86% of Mr. Terris's total non-Intra-Office Conferencing fees of $16,855.85.

---

Footnote continued from previous page
cannot demand a high hourly rate – which is based on his or her experience, reputation, and a presumed familiarity with the applicable law – and then run up an inordinate amount of time researching the same law.").

**2.    Plaintiffs' Intra-Office Conferencing Should Be Reduced by 50% Based On Particularly Excessive Conferencing in Preparation for and as Follow-Up to Special Master Meetings.**

In 2012 and 2013, the Terris Firm spent over 430 hours, totaling $290,343.15, on what it categorizes as intra-office conferencing. *See* Pls' Am. Ex. 12. This category includes 257 hours, totaling approximately $174,000, solely relating to intra-office conferencing to "prepare for" and "follow-up on" Special Master meetings. *Id.*; *see also* Tasher Report, Ex. C. Nowhere in Ms. Millian's 77-page affidavit supporting the Terris Firm's Fee Application does she explain why the work summarized therein required what amounts to months of attorney time spent talking to each other.

With regard to the Remanded Fees, the Special Master found the Terris Firm's "sheer number of hours spent on intra-office conferencing . . . excessive and dictate[d] a [20%] reduction." *See* Report and Recommendation at 23-24. Noting that the Terris Firm purports to have "exceptional expertise in environmental litigation," the Special Master rejected as unreasonable the Firm's practice of having "all lawyers at all conferences," and recommended "streamlined methods of communication that do not require multiple lawyers at multiple conferences." *Id.* at 24.

The Terris Firm has also been chastised by this Court in the past for excessive internal communications. *See Widnall*, 1995 WL 836144, at *5.

- 16 -

Counsel claimed in *Widnall* that "it is much less time consuming for an attorney to consult with another attorney about a legal issue, than it is for that attorney to research that issue," and that "[i]t is likewise much more efficient to consult with a supervisor before research and brief-writing have been done rather than to have substantial work discarded when the brief is edited." *Id.* These arguments were rejected by the *Widnall* Court:

> Plaintiffs' argument is based on mere conjecture. . . .
> Even assuming internal communications do indeed
> promote efficiency, plaintiffs stray from the central issue,
> billing judgment. The legal issues involved in the case
> simply do not require significant consultation or guidance
> by a supervisor. In light of that finding, the court
> concludes that the extraordinary amount of time
> expended on consultation was unnecessary and
> unproductive.

*Id.*; *see also In re Olsen*, 884 F.2d 1415, 1429 (D.C. Cir. 1989) (reducing fee award for excessive conferencing where the hourly rates were "of such magnitude as to indicate that the attorneys should have been able to decide on proper strategy without the great number of strategy conferences"); *Salazar v. District of Columbia*, __ F. Supp. 2d __, 2014 WL 342084, at *5-7, *9-10 (D.D.C. Jan. 30, 2014) (reducing intra-office conferencing fees due to plaintiffs "tendency to over-staff their work . . . [with] 3, 4, or 5 lawyers [in] attend[ance]").

Plaintiffs have not – and cannot – distinguish these types of fees in the pending Fee Application from those that were found to be unreasonable by the

Special Master in his Report and Recommendation; this is why Plaintiffs have conceded a 20% reduction of Intra-Office Conferencing time.  However, it is unreasonable for only a 20% reduction of time to be applied when, for purposes of the Special Master's prior review of the Intra-Office Conferencing issue as part of the Remanded Fees, the Special Master did not consider arguments regarding the Terris Firm's excessive conferences prior to and after Special Master meetings. *See* Report and Recommendation at 29 (stating that Defendants' arguments to reduce the award under the categories "Special Master meeting preparation and follow-up" were not considered because Defendants did not appeal the District Court's ruling on those fees).  Considering that the intra-office conferencing relating to Special Master meeting preparation and follow-up constitutes almost *60%* of the total amount of the Firm's time spent intra-office conferencing in 2012 and 2013, a larger percentage reduction of the Terris Firm's Intra-Office Conferencing time is warranted here. *See* Tasher Report at 10-12 (analyzing the extensive time up to five (5) attorneys spent in conferences in preparation for and after the Special Master meetings).

Moreover, there is no reason Plaintiffs spent so much time conferencing in particular in preparation for and following-up from the Special Master meetings. The parties have been working with the Special Master on these issues since 2003. The Special Master meetings are routine events; they take place once a month,

- 18 -

alternatively by telephone or in-person, and last on average 1-2 hours. *See id.* at 10. Given the routine nature of these meetings and the Terris Firm's familiarity with the legal and technical issues, the Terris Firm's claim that up to five (5) attorneys are required for lengthy internal meetings preceding and following the Special Master meeting warrants scrutiny. Plaintiffs have not – and cannot – explain why emails, memoranda or other more efficient and cost-effective methods cannot be used to obtain relevant information prior to these meetings and/or disseminate updates afterwards. They also cannot explain why oftentimes four or five attorneys were required to be present at these meetings. For example, as summarized *supra* in Section III.B.1, during 2012 and 2013, almost $40,000 of Mr. Terris's approximately $61,000 in fees were solely spent conferencing before and after Special Master meetings, meetings *he did not attend* and relating to substantive matters for which he largely served in a passive, supervisory role (considering he only billed $16,855.85 in non-conferencing time *in toto* on these matters over two years). Accordingly, Mr. Terris's presence at the hours of Special Master meeting-related conferences is not reasonable.

In sum, based on the excessive nature of Plaintiffs' intra-office conferencing, and in particular conferencing conducted in preparation for and in follow-up to the Special Master meetings as compared to the meetings themselves, a 50% reduction of the Terris Firm's intra-office conferencing time is appropriate.

- 19 -

This would result in a reduction to Plaintiffs' Fee Application of $145,171.58.  *See* Pls' Am. Ex. 12; Tasher Report at 29.

C.     **Plaintiffs' Fee Application Contains Additional Categories of Fees and Expenses that Are Unreasonable and Therefore Require a Reduction.**

Other than Bruce Terris's "oversight" time and Intra-Office Conferencing time, Plaintiffs' Fee Application contains several additional categories of fees and expenses that are excessive, duplicative or otherwise unreasonable, as set forth below.  In addition to these specific categories, the Terris Firm's time records illustrate excessive staffing on various projects that is plainly unreasonable, and shows the Terris Firm's inefficiencies that result in overbilling.  *See, e.g.*, Pls' Fee App. Ex. 7 at 18-22 (Line Entry Nos. 254-299) (where, in the subcategory of Supplemental Environmental Projects alone, Ms. Millian recorded drafting eighteen (18) memoranda to "file," generating almost $18,000 in fees); *id.* at 9 (Line Entry No. 114) (where Mses. Weaver, Alcorn and Millian all conferred with an expert on a discrete groundwater source control issue)[9]; Pls' Fee App. Ex. 6 at 31-32, Pls' Fee App. Ex. 7 at 97-98 ("Long-Term Groundwater Financial Assurances") (where all three senior named partners reviewed a 4.5 page letter that

---

[9] Although Ms. Weaver records this conversation with the expert as .667 hours, Ms. Millian purports to have spent an hour on the same conference.  *See* Pls' Fee App. Ex. 7 at 7 (Line Entry No. 81).  It is impossible for Honeywell to determine which time entry is accurate, but such discrepancies further highlight that the Terris Firm has failed to meet its burden of proving the reasonableness of the fees claimed.

- 20 -

an associate spent 10 hours drafting, the gist of which was to say "no action is required" and that Plaintiffs agree to "defer the issue").  Thus, while Honeywell specifically identifies certain categories of fees and expenses that warrant reduction, Plaintiffs' Fee Application must be viewed holistically in order to gain a sense of the inefficiencies and lack of billing judgment that persist throughout.[10]

### 1.      The Terris Firm's Excessive and/or Duplicative Time Spent on Technical Matters Is Unreasonable.

In 2012 and 2013, the Terris Firm generated substantial attorneys' fees on post-judgment and post-decree monitoring work that, based on the time record descriptions, appeared to be largely technical rather than legal in nature. Moreover, in certain instances, this work appeared to be entirely duplicative of the work undertaken by the Terris Firm's eight (8) experts and their six (6) supporting staff based on the time records and expert invoices submitted with Plaintiffs' Fee Application.  The excessive nature of the Terris Firm's expenditure of attorney time on technical work is particularly disconcerting given that (a) the Terris Firm's stable of experts are providing technical support on this monitoring work; (b) Special Master Torricelli's technical experts are providing technical support on this monitoring work; and (c) Honeywell's in-house engineers and outside experts are providing technical support on this monitoring work.  *See, e.g.*, Motion for

---

[10] The ***77-page*** Millian Affidavit attached in support of Plaintiffs' Fee Application is illustrative of this lack of billing judgment in and of itself.

- 21 -

Disbursement of Funds, Ex. 1 (March 21, 2013), ECF No. 1164 (showing that Special Master Torricelli has a team that includes multiple engineers from the engineering consulting firm, the Louis Berger Group, as well as counsel at Connell Foley LLP, to support his oversight of Honeywell's cleanup of the relevant Study Area, including Honeywell's compliance with the Consent Decrees and state and federal regulations).  Across each client/site category, the Terris Firm out-billed its experts on these technical matters by, in some instances, an order of magnitude or more.  *See* Tasher Report at 14-15.

Despite these widespread instances of overbilling and overstaffing, the most egregious example of the Terris Firm's abusive billing practices with regard to non-legal technical work occurred in its work on the 100% Design category for Study Areas 6 North and South, as discussed in detail in Mr. Tasher's Report at 16-21.  On a slew of technical subcategories such as "Barrier Wall Issues," "Geotechnical Issues," "Open Space Design Standards," "In-Situ Treatment," and the vague "Technical Issues," the Terris Firm overstaffed, overbilled, duplicated expert efforts and,  in block-billing entire eight-hour days of time, failed to adequately justify the fees expended thereon.  *See id.* at 21.  On Study Area 6 North "Technical Issues" alone, the Terris Firm amassed  over $68,000 in fees.  *See* Pls' Fee App. Ex. 6 at 9-14.  The label on this catch-all category sidesteps the simple fact that almost all the other subcategories are also technical issues on

- 22 -

which Terris Firm attorneys spent excessive and duplicative time. *See id.*; *see also* Tasher Report at 21. For example, within this subcategory, an attorney block-billed three 8-hour days and one 7-hour day (31 total hours) to reviewing the "history of technical issues negotiations," the 100 % Design document, and discussing expert comments thereon. *See* Pls' Fee App. Ex. 7 at 32-33 (Line Entry Nos. 436, 437, 439, 443). However, the experts' invoices do not reflect conversations with the attorney on all of these days. *See, e.g.*, Pls' Fee App. Ex. 19 (Rogers Aff.) at Rogers 1 (omitting 7/2/2012); Pls' Fee App. Ex. 15 (Ross Aff.) at Ross 11 (omitting 6/29/2012). It is not possible to discern whether the attorney's records or the experts' records are incorrect; but in either scenario, the Terris Firm has not met its burden of adequately supporting as reasonable the fees requested.

Similarly, under the client Study Area 6 South, the Terris Firm generated an excessive $41,000 on "Technical Issues." *See* Pls' Fee App. Ex. 6 at 20. Again, this catch-all category does not make sense given the fact that the Terris Firm bills what can only be described as technical work throughout the records for this client. *See* Pls' Fee. App. Ex. 6 at 20 (summarizing time billed to "In-Situ Treatment," "Confirmation Sampling Issues," and "Site Monitoring"); *see also* Tasher Report at 16-17.

Based on Mr. Tasher's analysis, of the 100% Design work for Study Areas 6 North and South, which he used as an exemplar as the most egregious example of

- 23 -

abusive "technical"-type billing, the Terris Firm duplicated expert effort, failed to justify the magnitude of fees generated and time expended, and inexplicably staffed a subcategory with as many as five (5) attorneys and two (2) paralegals. *See id.* at 18. Parties seeking reimbursement of fees and costs must "make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission." *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)*; see also Rode*, 892 F.2d at 1187 (explaining that attorneys' fees cannot be recovered "if the attorneys are *unreasonably* doing the *same* work") (emphasis in original) (citation omitted). The Terris Firm has made no such effort.

Based on the Terris Firm's excessive, duplicative and/or otherwise unreasonable time spent on technical work, Plaintiffs' Fee Application should be reduced by $156,038.46, or 30% of the fees generated in the 100% Design Category in Study Areas 6 North and South, the most egregious example of its overbilling for non-legal technical work.

### 2.    Attorney and Paralegal Time Spent on Clerical and Administrative Tasks Is Not Reimbursable.

The Terris Firm seeks $9,647.24 in attorney and paralegal fees for non-reimbursable clerical and administrative tasks. Plaintiffs' Fee Application provides no justification for passing such clerical and administrative overhead

- 24 -

costs along to Honeywell, and no paying client would reimburse such fees. *See* Tasher Report at 12-14.

Plaintiffs cannot justify billing Honeywell, as though it were a client, for attorney time spent scheduling meetings, talking to the court's clerk regarding filing issues, or for a senior named partner to draft a memorandum to a paralegal regarding "proofreading." *See, e.g.*, Pls' Fee App. Ex. 7 at 85 (Line Entry No. 1178); *id.* at 6 (Line Entry No. 77); *see also* Tasher Report at 12-14 (summarizing categories of objectionable clerical and administrative fees). Similarly, fees generated by a paralegal to "[c]ompare tables" with no further explanation, *see* Pls' Fee App. Ex. 7 at 28 (Line Entry No. 384), and attorney time spent providing instructions on transmitting documents to experts are not reasonable. *See, e.g.*, *id.* at 72 (Line Entry No. 984).

It is well-established that overhead costs, including clerical work, are not properly included in a request for attorneys' fees. *See Missouri v. Jenkins*, 491 U.S. 274, 288 n.10 (1989) ("Of course purely clerical or secretarial tasks should not be billed at a paralegal rate regardless of who performs them."); *Sheffer v. Experian Info. Solutions, Inc.*, 290 F. Supp. 2d 538, 549 (E.D. Pa. 2003) (excluding "the costs of clerical work, such as filing and copying" from inclusion in attorneys fees as overhead costs); *see also Palmer v. Rice*, No. Civ.A.76-1439, 2005 WL 1662130, at *13 n.7 (D.D.C. July 11, 2005) ("To award the firm fees for work

- 25 -

done by clerical personnel would be a windfall to the firm and is not justified by the case law.").

Accordingly, overhead costs such as these should not be awarded, and Plaintiffs' Fee Application should be reduced by $9,647.24.

### 3. The Terris Firm Cannot Justify Reimbursement for Time Spent Preparing its Fee Submissions.

The Terris Firm seeks $52,474.04 in attorney and paralegal fees on "SA 5-7 Fees," which includes the preparation of informal fee submissions in 2012 and 2013, among other tasks. *See* Pls' Fee App. Ex. 6 at 37; Pls' Fee App. Ex. 7 at 138-141 (Line Entry Nos. 1962-2029). Plaintiffs provide no explanation or justification for the involvement of four (4) attorneys and four (4) paralegals on these tasks. Moreover, it is particularly unreasonable for a senior named partner, billing $772/hour, to spend 33 hours reviewing attorney and expert time and editing time and expense records for the informal fee submissions. *See* Tasher Report at 23; *see, e.g.*, Pls' Fee App. Ex. 7 at 139 (Line Entry Nos. 1983-84) (documenting the senior partner spending 8.3 hours in a single day on these tasks). Not only are the hours expended unreasonable, but this task is inappropriate for a senior named partner. *See* Tasher Report at 23.

Additionally, it bears scrutiny that the Terris Firm expects reimbursement for time spent isolating and preparing its intra-office conferencing records. *See, e.g.*, Pls' Am. Ex. 12; Pls' Fee App. Ex. 7 at 139 (Line Entry No. 1989) ("Review

conferencing time to remove records that were not inter-office conferencing."). This exhibit is only required due to Plaintiffs' unreasonable and excessive conferencing practices, which necessitate review of Plaintiffs' intra-office conferencing time by Honeywell and/or the Court (and have justified a reduction in fees for this time by the Special Master in this case and by other courts). *See id.* at 139 (Line Entry Nos. 1984, 1989, 1992); Millian Aff. ¶ 82.

Although Plaintiffs may seek fees generated in preparation of a fee application, only "reasonable expenses" may be awarded. *See Brown v. Fairleigh Dickinson Univ.*, 560 F. Supp. 391, 414 (D.N.J. 1983). The fees the Terris Firm incurred in generating these informal fee submissions are not reasonable. No paying client would foot a bill for tens of thousands of dollars for preparation of the client's bill. Thus, Plaintiffs' Fee Application should be reduced by $25,000, or roughly the amount of fees generated by Ms. Pravlik, a senior named partner, specifically spent on reviewing attorney and expert time and editing time and expense records for these informal fee submissions. *See* Tasher Report at 23-24.

> **4.    The Terris Firm Cannot Be Reimbursed for Block-Billed Time Spent "Attending" Special Master Meetings That Is Not Ascertainable.**

In total, four attorneys billed over $96,000 to "Special Master Meeting Attendance." *See* Pls' Fee App. Ex. 6 at 33. As summarized *supra* in Section III.B.2., these meetings were held monthly (alternatively in-person and by

telephone conference) and averaged 1-2 hours each, which over the course of 2012 and 2013 amounts to roughly 36 hours of attorney time.  It is thus puzzling that close to $100,000 was billed to this subcategory.  Additionally, approximately $7,000 in fees was billed to Special Master Meeting Attendance; however, as summarized in the time narratives, this time should properly have been recorded as Special Master meeting preparation and follow-up time, a subcategory to which the attorneys also billed hundreds of thousands of dollars.  *See* Tasher Report at 22; Pls' Fee App. Ex. 6 at 33-34. This excessive preparation and follow-up time, which was mischaracterized as "Attendance" time is not reasonable, and thus should not be reimbursed.  *See* Tasher Report at 22-23.

Also, another $53,848 was block-billed for a handful of Special Master meetings in 2012 and 2013.  *Id.* at 23; *see also* Pls' Fee App. Ex. 7 at 117(Line Entry Nos. 1612, 1613, 1617, 1620, 1621, 1624); *id.* at 118 (Line Entry Nos. 1634, 1635, 1636, 1643); *id.* at 119 (Line Entry Nos. 1644, 1648); *id.* at 120 (Line Entry Nos. 1655, 1656).  As it is not possible to ascertain time spent actually attending the Special Master meetings, the Terris Firm has not met its burden of proving the reasonableness of the fees generated.  *See Rode*, 892 F.2d at 1183.  Thus, these fees, as well as those improperly characterized as "Attendance" time should be reduced, resulting in a total fee award reduction of $60,707.81.  *See* Tasher Report at 29.

- 28 -

**5.    Plaintiffs' Fees for Non-Working Travel Are Excessive and Unreasonable.**

Plaintiffs seeks reimbursement for $55,220.33 of non-working travel fees. *See* Pls' Fee App. Ex. 7 at 30 (Line Entry Nos. 407-408);  *id.* at 70 (Line Entry Nos. 960-966); *id.* at 136-137 (Line Entry Nos. 1932-1961).  The Terris Firm generated more than 70% of these fees ($39,245) traveling to and from the Special Master meetings, while simultaneously billing hundreds of thousands of dollars preparing for and following up on these meetings.  *See* Tasher Report at 12. Although the Terris Firm bills Honeywell at 50% of its normal rates for this non-working travel time, given the bloated staffing, the excessive attorney time spent on technical matters, and the sheer magnitude of the non-working travel fees, which will continue to be generated on a regular basis, it is not reasonable or sustainable for Honeywell to pay these fees even at a 50% rate. Moreover, many paying clients do not reimburse for non-working travel time.  *See* Tasher Report at 24.  Accordingly, the fee award should be reduced by $55,220.33.

**6.    Plaintiffs' Experts' Clerical and Administrative Time and Certain Expenses Are Not Reasonable or Reimbursable.**

To be compensable, expert witness fees and costs, like attorneys' fees and costs, must be necessary and reasonable.  *See Halderman by Halderman v. Pennhurst State Sch. & Hosp.*, 49 F.3d 939,943 (3d Cir. 1995); *Student Pub. Interest Research Grp. of N.J., Inc. v. Monsanto*, 727 F. Supp. 876, 889 (D.N.J.

1989).  The Terris Firm retained eight (8) experts and their six (6) supporting staff for work relating to post-judgment and post-decree monitoring in 2012 and 2013, and those experts billed close to half a million dollars of fees during that time period.

As summarized in the attached expert report, certain of these expenses, $89,071.84, were not necessary and reasonable and are not reimbursable or subject to reduction.  *See* Tasher Report at 24-27; *see also Sheffer*, 290 F. Supp. 2d at 549 (excluding "the costs of clerical work, such as filing and copying" as overhead costs).  Those time and expenses include:

- Bruce Bell of Carpenter Environmental Associates ("Bell") time billed to Document Management, Project Management/Budget or Job Files, without further explanation of the time which appears to be clerical/administrative and not properly reimbursable.  *See* Pls' Fee App. Ex. 14 Attach. B; Tasher Report at 26.

- Bell overhead expenses for computers and equipment, as well as undocumented expenses, which should not be reimbursed.  *See* Pls' Fee App. Ex. 14 Attach. B; Tasher Report at 27.

- Kenneth O'Connell of O'Connell & Lawrence, Inc. ("O'Connell") time categorized as secretarial, which would not reasonably be passed along to a paying client and thus should not be laid at Honeywell's doorstep.  *See* Pls' Fee. App. Ex. 17 Attach. B; Tasher Report at 27.

- O'Connell overhead expenses for a book, as well as undocumented expenses, which should not be reimbursed.  *See* Pls' Fee App. Ex. 17 Attach. B; Tasher Report at 27.

- Bell and Kim Hosea of Carpenter Environmental Associates and Benjamin Ross of Disposal Safety billed collectively $62,796.50 in non-working travel expenses for attendance at the Special Master meetings. *See* Tasher Report at 25; Pls' Fee App. Ex. 14 Attach. B; Pls' Fee App. Ex. 15 Attach. B. These expenses are excessive, especially in light of the fact that the in-person meetings only occurred every other month during 2012 and 2013. Given the hundreds of thousands of dollars of expert fees on these matters, and the fact that paying clients do not traditionally pay such fees, it is not justified for Honeywell to pay for non-working travel time. Similarly, Honeywell should not be expected to pay undocumented expenses generated by Carpenter Environmental amounting to $5,577.09. *See* Tasher Report at 25-26; Pls' Ex. 14 Attach B.

Accordingly, Plaintiffs' Fee Application should be reduced by $89,071.84 for these expert fees and expenses.

### 7.    Certain Terris Firm Expenses Are Not Reimbursable.

In addition to the expert expenses addressed in Section III.C.5, approximately $1,358.64 in expenses for conference calls, document production, and color printing are non-reimbursable overhead. *See* Tasher Report at 27-28; *Jenkins*, 491 U.S. at 296 (Rehnquist, C.J., dissenting) ("[A] prudent attorney customarily includes . . . office overhead − from secretarial staff, janitors, and librarians, to telephone service, stationery, and paper clips − in his own hourly billing rate."). As such, a $1,358.64 reduction in the fee award is appropriate.

- 31 -

## IV.    CONCLUSION

Based on the foregoing, Honeywell respectfully requests that the Court find

that Plaintiffs' Fee Application should be denied and reduced in accordance with

the arguments set forth herein.  Specifically, Plaintiffs' fees should be reduced by

the specific reductions set forth herein and summarized below:

| Category of Fees or Expenses | Reasonable Reduction |
|---|---|
| Bruce Terris Oversight Time | $14,567.64 |
| Intra-Office Conferencing Time | $145,171.58 |
| Excessive Time Spent in Technical Categories | $156,038.46 |
| Clerical/Administrative Time | $9,647.24 |
| Special Master Meeting Time | $60,707.81 |
| Preparation of Fee Submission | $25,000.00 |
| Terris Pravlik Non-Working Travel Time | $55,220.33 |
| Expert Time/Expenses | $89,071.84 |
| Terris Pravlik Expenses | $1,358.64 |
| **Total Reductions in Fees/Expenses** | **$556,783.54** |
| **Resulting Fee Award** | **$1,337,546.13**[11] |

---

[11] Any award on this Fee Application should be offset by Honeywell's prior payment of undisputed fees for 2012, as well as any other payments Honeywell may make on these Fees.  *See* Pls' Am. Ex. 4.

Dated:  June 30, 2014

Respectfully submitted,
**BAKER & HOSTETLER LLP**


*s/David J. Sheehan*

David J. Sheehan
45 Rockefeller Plaza
New York, New York 10111
Phone:  (212) 589-4200
Fax:  (212) 589-4201
dsheehan@bakerlaw.com

Michael D. Daneker (*pro hac vice*)
Rebecca L. D. Gordon (*pro hac vice*)
**ARNOLD & PORTER LLP**
555 Twelfth Street, NW
Washington, DC 20004-1206
Phone:  (202) 942-5000
Fax:  (202) 942-5999

*Attorneys for Defendants*
*Honeywell International Inc., et al.*

- 33 -