NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| INTERFAITH COMMUNITY ORGANIZATION, *et al.*,<br><br>          Plaintiffs,<br><br>v.<br><br>HONEYWELL INTERNATIONAL INC., *et al.*,<br><br>          Defendants.<br><hr>HACKENSACK RIVERKEEPER, INC., *et al.*,<br><br>          Plaintiffs,<br><br>v.<br><br>HONEYWELL INTERNATIONAL INC., *et al.*,<br><br>          Defendants. | Civil Action No.: 95-2097 (JLL)<br><br>OPINION |

**LINARES**, District Judge.

This matter comes before the Court by way of a motion to enforce the Consent Decree Regarding Remediation of the New Jersey City University Redevelopment Area ("NJCU Consent Decree" or "Consent Decree")[1] filed by Plaintiffs Hackensack Riverkeeper, Inc., William Sheehan, Reverend Winston Clark, and Lawrence Baker ("Plaintiffs"). Oral argument was heard in this matter on February 25, 2016. Certain matters raised in Plaintiffs' motion were addressed by prior

---

[1] Attached as Ex. 1 to Pls.' Br. in Supp. of Their Mot. to Enforce the NJCU Consent Decree ("Pls.' Mot.").

1

order of this Court. *See* ECF No. 1397. This Opinion addresses the remaining issue: whether construction of Building 6 as currently planned by New Jersey City University ("NJCU") violates the Consent Decree. After considering the parties' submissions and the arguments at the February 25 hearing, the Court denies Plaintiffs' motion with respect to the issue of Building 6.

## I. BACKGROUND

As recognized in the recitals to the Consent Decree, numerous lawsuits were filed against Defendant Honeywell International, Inc. ("Honeywell") related to contaminated soil and groundwater on various properties. *See* Pls.' Mot., Ex. 1, at 5-6. In an effort to resolve the disputes and move forward with remediation and redevelopment of the area, NJCU, Honeywell, Bayonne Municipal Utilities Authority ("BMUA"), and Plaintiffs entered into the Consent Decree. *See id.* at signature pages. The Consent Decree was approved and entered by this Court on January 21, 2010. *Id.* At issue in the present motion is the proposed construction of a building (Building 6) on the NJCU West Campus. The parties do not dispute that "[t]he Consent Decree . . . governs the Chromium Remedy at the NJCU West Campus Property." NJCU Opp'n at 4. They do dispute whether the Consent Decree permits Building 6 to be constructed as currently planned.

Relevant to the present dispute are four documents in addition to the main body of the Consent Decree: the Remedial Action Work Plan ("RAWP"), Figure 6A (attached as Exhibit A to the Consent Decree and referred to herein as "Exhibit A"); the NJCU Development Plan (attached as Exhibit B to the Consent Decree and referred to herein as "Exhibit B"); the NJCU Redevelopment Plan; and the Deed Notice (a form of which is attached as Exhibit F to the Consent Decree). Exhibit A shows two property areas relevant to the present motion: the Residential AOC (shaded blue) and the Commercial AOC (shaded light green). The distinction between these areas is important, as a different level of remediation by Honeywell was required for each area. Because

2

the level of remediation varied between the Residential AOC and the Commercial AOC, the permitted uses for each area post-remediation also varies. Specifically, "residential, day care, and educational uses, other than administrative, are prohibited in the NJCU Commercial AOC" under the Consent Decree. Consent Decree ¶ 87; *see also* ECF No. 1362-9 & 10 (Deed Notice, attached as Exhibit F to the Consent Decree), Ex. C-1 ¶ i(A)(s) ("Description of the restrictions on the NJCU Commercial AOC by operation of this Deed Notice). Restrictions on use in the Commercial AOC exist because the "chromium contamination . . . was left in place [in that area] and covered with an engineered, multi-layered cap designed to isolate the contamination and prevent contact with it." Pls.' Mot. at 2. The restrictions identified above do not exist for the Residential AOC because it was remediated to a different level. *See id.*; Hr'g Tr. (Feb. 25, 2016) ("Hr'g Tr.") at 30:15-17 ("The area that's been cleaned up to a level where any use can happen there, including people's homes.").

At the time the Consent Decree was approved and entered by the Court, various buildings were contemplated as part of the redevelopment of the NJCU West Campus. *See* Consent Decree, Exs. A & B. Only one building, Building 7, however was proposed to be within the Commercial AOC, construction of which would penetrate the cap. *Id.* The other proposed buildings on Exhibit B were shown to be wholly within the Residential AOC. *Id.* One of the buildings proposed to be wholly within the Residential AOC was Building 6. *Id.*

On September 28, 2015, as part of its regular updates to Plaintiffs, NJCU sent Plaintiffs a "six month look ahead schedule." Pls.' Mot., Ex. 7. The update informed Plaintiffs of NJCU's current plans regarding Building 6. *See id.*; *see also id.*, Ex. 10 ("2015 NJCU Redevelopment Plan"). NJCU currently plans to construct Building 6 partially in the Residential AOC and partially in the Commercial AOC, rather than wholly in the Residential AOC as originally conceptualized.

NJCU has also entered into a ground lease related to Building 6 "for a Term of fifty (50) years with a one-time option to extend for an additional twenty five (25) years" for the purpose of "the development of Block 6 for one (1) four story building containing a Shop-Rite supermarket, fitness center, restaurant and NJCU athletic fields and a multi-level structured parking garage." NJCU Opp'n at 9; ECF No. 1354-2 (Declaration of Arthur Ramey, Jr.) ¶ 25 & Ex. 2. Plaintiffs argue that this planned construction, wherein a portion of Building 6 now will be in the Commercial AOC, violates the Consent Decree. *See* Pls.' Mot. at 3. They also argue that, even if such a building were allowed, the proposed use (which includes athletic fields) also is prohibited under the Consent Decree. *See* Pls.' Reply at 13.

Plaintiffs admit that "the Consent Decree does not include language expressly stating that the construction of Building 6 in the [Commercial AOC] is prohibited." *Id.* at 3. Instead, Plaintiffs argue that, when read as a whole, the Consent Decree requires conformance with Exhibit B, and that no variation from Exhibit B (which shows Building 6 only in the Residential AOC) is permitted. *See* Pls.' Mot. at 12; *see also, e.g.*, Hr'g Tr. at 37:11-22. Plaintiffs also acknowledge that construction of Building 7 as originally contemplated, which was to be constructed within the Commercial AOC and which they agreed to, would require penetration of the contamination cap. *See* Hr'g Tr. at 10:25-11:13. And, Plaintiffs acknowledge that they agreed that such penetration of the cap for purposes of construction and the subsequent repair and replacement of the cap could be undertaken with oversight by the New Jersey Department of Environmental Protection ("NJDEP"), not a Special Master. *See* Hr'g Tr. at 10:25-12:5; *see also* Consent Decree ¶ 76. Plaintiffs further acknowledge that, at this time, there is no current plan for Building 7 so that the

only issue before the Court is the construction of *one* building in the Commercial AOC—now Building 6.[2] *See* Hr'g Tr. at 80:2-16. Thus, in summary, Plaintiffs' position is the following:

- Plaintiffs agreed to construction of *one and only one* building in the Commercial AOC that would penetrate the cap;

- For that one building (labeled "Building 7"), Plaintiffs agreed that oversight by the NJDEP—not a Special Master—was appropriate;

- Plaintiffs agreed that the one building that could be constructed in the Commercial AOC was required to be in the exact location as the proposed Building 7 on Exhibit B;

- Any other construction in the Commercial AOC that requires penetration of the cap that does not exactly conform to Exhibit B is prohibited under the Consent Decree;

- Even though no other building is presently planned to be constructed within the Commercial AOC, Building 6 is nonetheless prohibited because it does not exactly conform to Exhibit B (which only shows "Building 7" in the Commercial AOC in a location different than the currently proposed Building 6); and

- This is true even though the Consent Decree does not expressly state that such construction is prohibited because, when the Consent Decree is read as a whole, it is clear that the parties clearly and unambiguously agreed that only construction of "Building 7" as shown on Exhibit B is permitted in the Commercial AOC.

NJCU and Honeywell dispute Plaintiffs' position, arguing that Plaintiffs' construction of the Consent Decree makes no sense, ignores contrary language in the Consent Decree and related documents, and would render certain Consent Decree provisions superfluous. In short, they argue that the current plan for Building 6 is permitted by and consistent with the Consent Decree.

---

[2] They also argue that there is a technical difference between what will be required for the penetration of the cap for construction of Building 6 compared to what would be required for the construction of the conceptual Building 7 as depicted on Exhibit B because of different water levels in the different locations. *See* Pls.' Reply at 23-24; *see also* Hr'g Tr. at 19:14-24. This argument, however, is disputed and is speculative as no detailed construction plan have been completed. *See* Hr'g Tr. at 13:12-17, 41:20-25, 66:4-14.

5

## II.  LEGAL STANDARD

Courts "discern the scope of a consent decree by examining the language within its four corners," and "as consent decrees have many of the attributes of contracts, we interpret them with reference to traditional principles of contract interpretation." *U.S. v. New Jersey*, 194 F.3d 426, 430 (3d Cir. 1999). To that end, a court should "read the document as a whole in a fair and common sense manner." *Hardy ex rel. Dowdell v. Abdul-Matin*, 965 A.2d 1165, 1169 (N.J. 2009). Furthermore, an interpretation that "gives reasonable meaning to all of the contract's provisions is preferred to one which leaves a portion of the writing useless or inexplicable." *Pennbarr Corp. v. Ins. Co. of N. Am.*, 976 F.2d 145, 151 (3d Cir. 1992) (internal quotations omitted). Finally, a court "may not make a different or better contract than the parties themselves saw fit to enter into." *Id.*

## III.  DISCUSSION

Here, there is no question that penetration of the cap in the Commercial AOC for construction of a building is allowed under the Consent Decree—Plaintiffs admit that it is. *See* Hr'g Tr. at 10:25-11:13; *see also* Consent Decree ¶ 76. The dispute is whether this particular building—Building 6—may be constructed partially in the capped Commercial AOC area. The present dispute also is not a technical one, *i.e.* it is not a dispute that Building 6 as constructed will harm the Chromium Remedy in a way that Building 7 would not have. That issue is not ripe as detailed plans have yet to be completed. *See* Hr'g Tr. at 13:12-17, 41:20-25, 66:4-14. The present dispute then is what the Court characterizes as a line in the sand dispute. Plaintiffs have made it clear that they do not care how Building 6 will be constructed, whether it is any different than what was proposed (and agreed to) for Building 7, or whether it will affect the Chromium Remedy in any way not contemplated for Building 7. *See, e.g., id.* at 20:14-21, 21:4-12. They do not care that there is presently only one building at issue, and that they agreed to construction of one

6

building in the capped Commercial AOC area. *Id.* Their position is simply that none of these questions matter because the proposed construction either conforms precisely to what is depicted on Exhibit B and is permitted, or it does not precisely conform to Exhibit B and it is prohibited under the Consent Decree absent modification of the Consent Decree by mutual agreement of the parties or complete remediation of the Commercial AOC area by Honeywell.

As there are no express provisions in the Consent Decree supporting Plaintiffs' position, Plaintiffs hang their hat on three interpretation arguments: (1) that paragraph 66 of the Consent Decree requires consistency with Exhibit B and NJCU's plans are not consistent with Exhibit B; (2) that Exhibit B may not be amended unilaterally by NJCU or Honeywell; and (3) that inclusion of provisions in the Consent Decree related to Building 7 in the Commercial AOC coupled with no similar provisions for other construction in the Commercial AOC supports an interpretation that the Consent Decree only permits the construction of Building 7 in the Commercial AOC. *See* Pls.' Mot. at 10-12; Pls.' Reply at 4. NJCU and Honeywell, on the other hand, argue that Plaintiffs' interpretation is inconsistent with other provisions of the Consent Decree (in particular ¶ 105, ¶ 99, and the Deed Notice) and would make certain provisions superfluous. *See* NJCU Opp'n at 17-19; Honeywell Opp'n at 9. They argue that "conceptual" Building 7 was expressly addressed in the Consent Decree because it was contemplated at the time, but that the Consent Decree provided the flexibility that is necessary in large construction projects for later necessary modifications. *See* NJCU Opp'n at 21-22; Honeywell Opp'n at 6-7.

Paragraph 66 provides:

> **Consistency of the Chromium Remedy with NJDEP Guidance and Remedial Action Work Plan** [Exhibit A]. The Chromium Remedy shall be consistent with the Technical Requirements for Site Remediation, the NJDEP Chromium Policy, and the Remedial Action Work Plan approved by NJDEP, and the NJCU Development Plan [Exhibit B]. In the event of any conflict or inconsistency between this Consent Decree and any Remedial Action Work Plan approved by

7

> NJDEP, the provisions of this Consent Decree shall control. However, nothing in this Consent Decree shall limit NJDEP's authority to require Honeywell, other Parties, or third parties from undertaking remedial activities at the NJCU Redevelopment Area in addition to those required by this Consent Decree.

"Chromium Remedy" is defined in the Consent Decree as "those remedial actions set forth in Article III of this Consent Decree," which encompasses remedies related to the Residential and Commercial AOC areas. Consent Decree ¶ 3. Thus, paragraph 66 expressly says that the remedial actions shall be consistent with Exhibit B, it does not say all construction and/or development shall be consistent with Exhibit B. It also states that in the event of inconsistency between the Consent Decree and the Remedial Action Work Plan, the Consent Decree—not Exhibit B—controls. The Court therefore does not find this paragraph, standing alone, persuasive in supporting Plaintiffs' position that the Consent Decree requires all *construction* to be precisely consistent with Exhibit B or that Exhibit B controls where there is an inconsistency with the Consent Decree and other documents.

The Court also is not persuaded by Plaintiffs' argument that Exhibit B may not be modified in *any* manner. The Consent Decree expressly recognizes that the RAWP and NJCU Redevelopment Plan may be modified, supplemented, and/or amended. Consent Decree ¶ 23 ("NJCU Redevelopment Plan shall mean the New Jersey City University West Campus Redevelopment Plan approved on February 9, 2005, and any approved amendments thereto."), ¶ 33 ("Remedial Action Work Plan or RAWP shall mean the July 2007 Final Supplemental Remedial Investigation Report/Remedial Action Selection Report/Remedial Action Work Plan for Study Area 5, NJCU Redevelopment, Sites 90/184 and a Portion of Site 153 or any supplementation or modification thereto approved by NJDEP . . . ."). The Consent Decree is silent however as to whether Exhibit B may be amended; it neither states that amendments are prohibited nor acknowledges that amendments are allowed. *Id.* ¶ 20 ("NJCU Development Plan shall mean

8

the plan for development of the NJCU West Campus dated October 23, 2007, which is attached hereto as Exhibit B.")

The Consent Decree states that "the Parties to this Consent Decree each believe that it is in their mutual interest to move forward productively to resolve their differences so that they can implement environmental remediation at the NJCU Redevelopment Area that ensures the continued protection of human health and the environment and so that Study Area 5 can be redeveloped in keeping with Jersey City's vision for a revitalized West Side." *Id.*, "Recitals," at 8. It further states that "the settlement which is the subject matter of this Consent Decree contemplates the environmental remediation of the NJCU Redevelopment Area so that it may be redeveloped to create *a major mixed use project* in an important section of Jersey City." *Id.* (emphasis added). Thus, the purpose of the Consent Decree was to facilitate both remediation and redevelopment.

The Court notes that the current plan for *all* of the buildings on the 2015 Redevelopment Plan, which contains the disputed new positioning for Building 6, bears almost no resemblance to Exhibit B—most, if not all, of the buildings are differently situated from how they were originally depicted on Exhibit B. *Compare id.*, Ex. B *with* Pls.' Mot., Ex. 10 (2015 NJCU Redevelopment Plan). Plaintiffs have voiced no complaint that failure to precisely follow Exhibit B with respect to the other buildings on the 2015 NJCU Redevelopment Plan violates the Consent Decree. Thus, Plaintiffs do not appear to believe that *all* modifications of Exhibit B are prohibited. Instead, they appear to be more narrowly arguing that the Consent Decree prohibits modification to the construction plans *for the Commercial AOC area* as depicted on Exhibit B, a position even farther removed from the express language of the Consent Decree. More importantly, Plaintiffs have not explained how a document designed to facilitate both remediation and a major redevelopment

9

project and which expressly provides for modification or amendment of the redevelopment plans can be reconciled with an argument that another exhibit depicting conceptual development plans forestalls any and all such modifications or flexibility for development.

To the extent that Plaintiffs argue that paragraph 77 supports their argument that Exhibit B may not be amended (*see* Pls.' Mot. at 13), that argument also is misplaced. Plaintiffs state that paragraph 77 "only permits such amendment to provide for full remediation of the capped area to allow for unrestricted use." *Id.* However, paragraph 77 provides:

> "[I]f NJCU or a future owner of the NJCU Commercial AOC prepares a development plan similar in level of detail to Exhibit B *to change all or any part of the NJCU Commercial AOC to residential or other uses currently prohibited under paragraph 87*, it shall inform Honeywell and Riverkeeper. Within 90 days of receiving such written notice, Honeywell shall propose further remedial action, as necessary, for the entire NJCU Commercial AOC, to meet NJDEP's requirements for Unrestricted Use of the NJCU Commercial AOC in effect at that time and a schedule for undertaking such further remedial action in conjunction with the proposed development plan. . . .

Consent Decree ¶ 77 (emphasis added). NJCU and Honeywell are not attempting to modify the areas on Exhibit B from commercial to residential uses.[3]

Finally, Plaintiffs argue that by including specific provisions related to the possible future development of Building 7 without similar provisions for any other building construction in the Commercial AOC area, indicates an intent to limit construction in the Commercial AOC only to Building 7. Pls.' Mot. at 10; Pls.' Reply at 5 (arguing that "*expressio unius est exclusion alterius* instructs that when certain matters are mentioned in a contract, other similar matter nots mentioned were intended to be excluded"). The Court first notes—as Plaintiffs admit (Pls.' Mot. at 9; Pls.'

---

[3] To the extent that Plaintiffs also argue that the Redevelopment Plan "cannot be modified or deviated from without the explicit approval of the Jersey City Planning Board" (Pls.' Mot. at 12), that argument is moot, as the current plan has been approved by the Jersey City Planning Board (NJCU Opp'n at 24; Hr'g Tr. at 41:19).

10

Reply at 5-6)—that nowhere in the Consent Decree is there any language stating that Building 7 is the only construction permitted to penetrate the cap in the Commercial AOC area.[4] The Court further notes that the provisions related to Building 7 are not included in the Consent Decree in such a way to indicate that they are meant to be a list of permitted construction. More importantly, Plaintiffs ignore other provisions in the Consent Decree that are not consistent with Plaintiffs' interpretation. For example, paragraph 105 ("Coordination of Construction Responsibilities") provides that "NJCU shall construct, repair, and maintain *any buildings* in the NJCU Commercial AOC in such a way as to minimize disruption to the Chromium Remedy and shall cooperate with Honeywell in the coordination of any such construction with Honeywell's repair or replacement of components of the Chromium Remedy." *Id.* ¶ 105 (emphasis added). Paragraph 74 ("Commercial AOC Cap") provides that "[e]xclusive of roadways, pavement, *building foundations*, parking lots, or other impervious surfaces, the cap shall be overlain by layers of Clean Fill, . . . ." *Id.* ¶ 74(b) (emphasis added). Paragraph 99 provides for "[m]onitoring during *any development or construction in the NJCU Commercial AOC* to ensure that at the conclusion of the construction activity, the maintenance, repair, or replacement of the cap and other engineering controls in the NJCU Commercial AOC are restored to the specifications set forth in the Final 100% Remedial Design or to a level of protection at least equivalent to the original Chromium Remedy." *Id.* ¶ 99(h) (emphasis added). Paragraph 104 provides that "NJCU shall provide Honeywell with a list of tenants *in any development on the NJCU Commercial AOC* and Honeywell shall provide annual written notice to the tenants of any long-term monitoring or maintenance activities undertaken with respect to the Chromium Remedy." *Id.* ¶ 104(e) (emphasis

---

[4] "Commercial AOC" is defined in the Consent Decree as "the area which is shaded light green on Figure 6A of the approved RAWP, attached . . . as Exhibit A." Consent Decree ¶ 5.

added). The Deed Notice provides that "[e]xcept as provided in the Consent Decree and in Paragraph 6B, below, no person shall make, or allow to be made, *any alteration, improvement*, or disturbance in, to, or about the NJCU Commercial AOC which disturbs any engineering control at the NJCU without first obtaining written consent of the Department of Environmental Protection." Deed Notice ¶ 6A (emphasis added). The Deed Notice does not require that any improvement other than Building 7 shall not be made without first modifying the Consent Decree or seeking written consent from all parties to the Consent Decree.[5]

All of the parties in this action are very well represented. If the parties had agreed that the only building construction and/or development in the Commercial AOC that could penetrate the cap was Building 7, they easily could have made that clear. Similarly, it is difficult to understand how such an agreement (that "Exhibit B controls the *development* allowed in the Capped Area, and as such, only Building 7 was addressed in the Consent Decree" (Pls.' Reply at 4 (emphasis added)) can be reconciled with all of the above language in the Consent Decree referencing any buildings (plural), foundations (plural), and any development in the Commercial AOC.

Plaintiffs argue that when paragraph 105 "is read in conjunction with paragraphs 75 and 76 [dealing with Building 7], the only logical interpretation is that paragraph 105 is meant to supplement those paragraphs. In other words, paragraph 105 does not authorize additional construction, but instead directs NJCU as to how it should construct, repair, and maintain the buildings that have been authorized by paragraphs 75 through 76." *Id.* at 7-8. They further argue that "[a]cceptance of Honeywell and NJCU's arguments regarding paragraph 105 would make

---

[5] Paragraph 91(b) ("NJCU Commercial AOC Deed Notice") was agreed to by all parties and provides that "[w]ithin 90 days of completion of the remedial measures under paragraphs 74 and 86, NJCU shall record a deed notice for the NJCU Commercial AOC in the form attached hereto as Exhibit F."

12

provisions of the Consent Decree superfluous. For example, paragraph 76, which provides for Building 7 in the Capped Area and sets up a process for its construction, is made superfluous." *Id.* at 8. Plaintiffs' argument is flawed. First, Plaintiffs contradict themselves—on the one hand they argue that paragraph 105 does not authorize additional construction, but instead directs NJCU as to how construction and repairs will be undertaken, and, on the other hand, a few sentences later, they argue paragraph 76 itself sets up the process for Building 7's construction. Second, paragraph 105 is a broad, general provision, and paragraph 76 is a specific provision dealing with Building 7. It is unclear how 105 *supplements* 76 except as to provide guidance for circumstances beyond those involving Building 7. The complete provisions provide:

> 105. **Coordination of Construction Responsibilities.** NJCU shall construct, repair, and maintain any buildings in the NJCU Commercial AOC in such a way as to minimize disruption to the Chromium Remedy and shall cooperate with Honeywell in the coordination of any such construction with Honeywell's repair or replacement of components of the Chromium Remedy.

> 76. **Coordination of Cap with Future Construction of Building 7.** If NJCU advances to Phase II of the NJCU Development Plan and determines to undertake development of Building 7 *as shown conceptually on Exhibit B* attached hereto, NJCU and Honeywell shall cooperate in coordinating the construction schedule and construction of Building 7 with any necessary and/or required disturbance, repair, and replacement of the cap at elevations set forth in this paragraph. Honeywell recognizes that construction of Building 7 may require (a) relocation of Clean Fill and removal of the geomembrane liner and other components of the cap within some or all of the Building 7 footprint area; (b) excavation and disposal of capped soils from the Building 7 footprint area to allow for reinstallation of the geomembrane liner at an elevation to accommodate building foundation design expected to be approximately 12 feet to 14 feet above mean sea level ("MSL"), (c) reinstallation of the geomembrane layer and other cap components to integrate the cap with construction of Building 7, and (d) such further work as may be necessary and/or required by the NJDEP to implement the above work and so that construction of Building 7 may proceed. Honeywell shall seek and obtain NJDEP approval or Licensed Site Remediation Professional approval, if required by law, for the further Chromium Remedy activities set forth in this paragraph and to perform such activities prior to construction of Building 7 in a timely manner so as not to unreasonably affect the construction, timing, and schedule of NJCU for the construction of Building 7. Honeywell shall present the work plan for the further

13

> Chromium Remedy in a document that is Subject to Review and Comment by the Non-Honeywell Parties with an Interest and approval by NJDEP.

*Id.* ¶¶ 105, 76 (emphasis added). Finally, Plaintiffs ignore that paragraph 105 is not the only paragraph in the Consent Decree that contemplates construction and/or development of more than one building in the Commercial AOC area, as noted above.

Thus, the Court disagrees with Plaintiffs that the Consent Decree limits construction in the Commercial AOC only to a building called "Building 7" in the specific location as depicted on Exhibit B. The Court also disagrees with Plaintiffs that rejecting their interpretation will permit open-ended construction in the Commercial AOC. First, the area at issue is not large enough to accommodate Plaintiffs' hyperbolic argument of numerous potential future buildings. *See* Hr'g Tr. at 22:3-7. Second, and more importantly, any construction in the Commercial AOC or other disturbance of the cap is limited in the Consent Decree by requirements that it be consistent with the Chromium Remedy. Plaintiffs may thus always challenge specific building plans for failure to so comply with the Consent Decree's requirements.

The Court also disagrees that there is no procedure outlined in the Consent Decree that could guide construction of Building 6. Paragraph 105 provides a general process for the coordination of construction for "*any*" buildings," and paragraph 76 provides one agreed-to example of a process for construction that requires penetration of the cap.

The Court also is not persuaded by Plaintiffs' speculative uses argument—that eventually the portion of Building 6 in the Commercial AOC *may* be used for a prohibited purpose. *See* Pls.' Mot. at 12; Hr'g Tr. at 17:1-4. As Plaintiffs admitted at the February 25 hearing, Building 7 (which they agreed to) also could conceivably be used improperly at some future time. *See* Hr'g Tr. at 18:19-25. Numerous provisions in the Consent Decree address this issue and provide Plaintiffs

14

means to monitor use within the Commercial AOC and provide remedies for violations. For example, paragraph 88 provides:

> Annually, beginning on January 15, 2011, and on each anniversary date in each year thereafter until such time as further remedial activities are undertaken pursuant to paragraph 77 and an Unrestricted Use No Further Action Determination is issued for the NJCU Commercial AOC, NJCU shall submit a written notice to Honeywell and Riverkeeper stating whether NJCU is in compliance with the deed notice and whether there are any uses in the NJCU Commercial AOC that are prohibited under paragraph 87 or the deed notice. Such notice shall identify all categories of uses (e.g., commercial, retail, etc.) of the property since the date of the last annual notice, including new and continuing categories of uses. Honeywell and Riverkeeper will remind NJCU of this annual obligation.

Paragraph 91 provides that "[d]uring the period in which the NJCU Commercial AOC is encumbered by the deed notice [which contains use restrictions], NJCU and Honeywell shall comply with the requirements of the deed notice. . . . The deed notice shall be enforceable against NJCU and Honeywell in the Consolidated Litigation." Consent Decree ¶ 91(b). Paragraph 98 requires Honeywell to design a plan to "[p]rovide monitoring to ensure that the restrictions of the institutional controls are being satisfied, *including the use restrictions on the NJCU Commercial AOC . . . .*" *Id.* ¶ 98(b) (emphasis added).

The Court agrees with Plaintiffs in concept however with respect to their specific argument that Building 6 may not be used for a purpose prohibited by the Consent Decree as outlined in paragraph 87. Paragraph 87 ("Restrictions on the Use of the NJCU Commercial AOC") provides:

> Until such time as further remedial activities are undertaken pursuant to paragraph 77 and an Unrestricted Use No Further Action Determination is issued for the NJCU Commercial AOC, residential, day care, and educational uses, other than administrative, are prohibited in the NJCU Commercial AOC. Commercial, retail, office, academic administrative use, open space, utility corridors, transportation, roadway, crossing or access to adjacent properties, or other uses that are not prohibited by the deed notice are permitted in the NJCU Commercial AOC.

The Deed Notice that encumbers the property also contains a use restriction. *See* ECF No. 1362-10, Ex. C-1 ("By operation of this Deed Notice, the NJCU Commercial AOC shall not be used for

15

residential, day care, or educational uses, except administrative educational uses"). NJCU's current plans indicate that tennis courts to be used in part for the school's tennis program will be at least partly in the portion of Building 6 located in the Commercial AOC. Because this issue was raised by Plaintiffs for the first time in reply and was therefore not fully briefed by all parties, and because NJCU's construction plans are not final and the NJDEP has not reviewed the Building 6 plans, the Court does not reach the issue of whether the tennis courts are permitted at this time.[6]

Finally, the Court disagrees with Plaintiffs that appointment of a Special Master to supervise Building 6 plans and construction is necessary or appropriate at this time. Plaintiffs admitted that they agreed that construction of Building 7, which would have penetrated the cap, could be overseen by the parties and the NJDEP (not a special master) as provided in paragraph 76. *See* Hr'g Tr. at 11:13-12:5; Consent Decree ¶ 76. Although Plaintiffs argue that there will be different issues presented by construction of Building 6 than the previously proposed Building 7 that require special monitoring, the Court finds such concerns speculative at this time as detailed construction plans have yet to be completed.

For these reasons, the Court finds that the Consent Decree does not limit construction in the Commercial AOC to Building 7 and only as precisely depicted on Exhibit B. The Court does agree (as do the all the parties) that the uses of the portion of Building 6 that are located in the Commercial AOC will be constrained by Paragraph 87, but it does not rule at this time whether the proposed tennis courts comply with this paragraph. The Court also finds that appointment of

---

[6] If the parties believe that the detailed plans may not proceed without such a determination first being made by this Court, then NJCU should inform Plaintiffs and the Court of its intention to proceed with the tennis courts in the Commercial AOC portion of Building 6 and indicate why this issue is ripe for decision at this time, and the Court will set a briefing schedule to resolve that issue. The Court does note that on Exhibit B, the "Fieldhouses" in Building 6 were categorized as "academic." *See* Consent Decree, Ex. B.

a special master to monitor construction of Building 6 is not warranted at this time. Finally, to be clear, the Court is not ruling that Building 6 (or any other building) may be constructed in any manner sought by NJCU and/or Honeywell. NJCU and Honeywell must submit the detailed construction plans to Plaintiffs for review as soon as they are completed, and the parties are encouraged to meet and confer regarding any disputes over those plans prior to returning to this Court to raise potential issues with such plans.[7]

## IV. CONCLUSION

For the reasons set forth above, Plaintiffs' motion with respect to Building 6 is denied. An appropriate Order accompanies this Opinion.

DATED: April 7, 2016

                                                   /s/ Jose L. Linares
                                                   JOSE L. LINARES
                                                   UNITED STATES DISTRICT JUDGE

---

[7] To the extent that third parties raise issues with existing remediation efforts, *see, e.g.*, ECF No. 1398, those issue have not been raised by Plaintiffs and are not presently before the Court.